ANDREW COMPTON, Appellant, *vs.* SQUIRE E. JOHNSON
*et al.* Appellees.

*Opinion filed June 16, 1909.*

CONTRACTS—*fact that a party makes bad bargain is not ground
for setting aside.* The mere fact that a complainant compromises
his suit to have his deed, absolute in form, declared a mortgage
and settles the controversy for much less than he is entitled to de-
mand is not ground for setting aside the agreement, where there
is no claim that he was of unsound mind or incapable of under-
standing and transacting ordinary business, but only that he was
a man of peculiar characteristics and disposition.

APPEAL from the Circuit Court of Lee county; the
Hon. OSCAR E. HEARD, Judge, presiding.

This was a bill in chancery filed by the appellant in the
circuit court of Lee county alleging that a certain convey-
ance made by the complainant to defendants Johnson and
Avery on June 17, 1899, be declared a mortgage, and that
complainant be permitted to redeem all of said lands that
had not theretofore been sold by Johnson and Avery, and
that as to said lands that had been sold said defendants be
decreed to account to complainant and for rents and profits
of said lands, and also that a certain tax deed to a portion
of said premises be declared invalid and set aside as a cloud
upon complainant's title.

The bill alleges that the complainant was the owner of
two hundred acres of land, described as the north half of
the north-west quarter of section 11, the south half of the
north-west quarter of section 24 and the south-west quarter
of the south-west quarter of section 2, all in township 37,
north, range 1, in the county of Lee and State of Illinois;
that complainant had mortgaged said premises to William
C. Andrus to secure $3200; that said mortgage was fore-
closed and the premises sold by the master in chancery
June 17, 1898, under decree of the circuit court; that An-

40—28

drus bought the premises at the master's sale and assigned the certificate of purchase to H. L. Fordham. The bill alleges that on the 17th day of June, 1899, about four o'clock in the afternoon, defendant Johnson, who resided in Dixon, went from that place, in company with a brother of the complainant, to the village of Compton, where complainant resided, to see him about redeeming the land from the mortgage sale; that they told him that was the last day he would have to make the redemption, and he proposed to go to Mendota to get the money. The bill alleges Johnson told complainant he and his partner, Avery, who were in the real estate business, would furnish him the money to make the redemption and take a mortgage or deed on the real estate for security; that complainant thereupon went to Dixon with Johnson, and on arriving there talked the matter of redemption over with Johnson and Avery; that Johnson and Avery desired a deed as security for the money they would advance to redeem instead of a mortgage, and agreed with complainant that upon re-payment of the sum advanced by them to redeem, with six per cent interest per annum, they would re-convey the premises to complainant by good and sufficient deed; that complainant thereupon agreed to and did execute to said Johnson and Avery a deed to said two hundred acres of land. The bill further alleges that Johnson and Avery paid $4763.63 to redeem said lands; that this was paid to the master in chancery and nothing whatever was paid to complainant. The bill alleges that after securing the deed said Johnson and Avery denied that it was made to them as security for money advanced to redeem the land and now pretend that they purchased said premises and had absolute title thereto; that they had persuaded the tenants on said lands to attorn to them as landlords, and that they had sold the south half of the north-west quarter of section 24, township 37, and the south-west quarter of the south-west quarter of section 2, in said township, to innocent purchasers, who had

no notice of the equities of the complainant. The bill further alleges that June 15, 1898, the north half of the north-west quarter of section 11 was sold for non-payment of taxes to A. K. Trusdell; that said Trusdell assigned the certificate of purchase to H. L. Fordham and W. L. Geisinger, and that the latter afterwards assigned his interest to Fordham, to whom the county clerk, on the 14th day of July, 1900, executed a tax deed. The bill alleges that said tax deed was invalid on account of numerous informalities set out in the bill. The bill further alleges that on the 13th day of February, 1904, Fordham and wife conveyed said tract of land to which Fordham had a tax deed to defendants Johnson and Avery. The bill alleges that complainant was ready and willing, and tendered and offered, to pay the defendants whatever sum should be found due them for money advanced to redeem the land and whatever sum was paid by Fordham at the tax sale, with interest thereon, and subsequent taxes, if any, paid on the land by Fordham or defendants Johnson and Avery, and any other sums that might be found to have been expended upon the land by defendants which the complainant ought to pay.

The amended answer admits that Johnson and the complainant's brother went to see complainant at Compton on the 17th day of June, 1899, and told him that was the last day he had to redeem from the master's sale, but denies Johnson told him he would furnish the money to make the redemption and take a mortgage or deed on the premises. The answer admits that the complainant went with John-son and Lewis Compton to Dixon on the evening of the said day and that at the office of defendants Johnson and Avery the matter of making the redemption was talked over, but denies that either of said defendants offered to take a deed as security for the money advanced by them to complainant to redeem said lands or that they agreed to re-convey the premises to complainant, and denies that the

deed was taken by defendants as security for the money advanced complainant by them. The answer avers that the money paid complainant by defendants was in consideration of the absolute purchase of the land; that the deed was not intended as a mortgage, and admits that defendants have sold one hundred and twenty acres of the land to *bona fide* purchasers. The answer admits that defendants Johnson and Avery acquired the title Fordham had to the eighty acres of land by virtue of his tax deed, and denies that said tax deed is invalid. The answer further alleges that the complainant has during all the time resided within a half mile of the eighty-acre tract to which Fordham acquired a tax deed, and had knowledge that Fordham was in possession of the same from the 14th day of July, 1900, to the time Fordham conveyed to defendants Johnson and Avery, in February, 1904, and that said complainant has known defendants were in possession of said lands from that time to the commencement of this suit, and that he had paid no taxes on said lands since 1896, but the same were paid by Fordham up to the time he conveyed to defendants Johnson and Avery and since then the taxes have been paid by defendants, and that during all the time since Fordham took possession under his tax title complainant has remained silent and acquiesced in the claim under said title. The answer further avers that in July, 1899, complainant filed a bill in the circuit court of Lee county to the same effect, substantially, as the bill in this case; that said Johnson and Avery were made defendants to said bill and answered the same, to which the complainant filed a replication; that said suit was never tried, but that while it was pending defendants Johnson and Avery made settlement or compromise with the complainant, whereby said defendants were to convey to complainant the north half of the north-west quarter of section 11, in consideration for which complainant agreed to permit the deed given by him to said defendants to be and become absolute to the

remainder of said premises, and this was to be a satisfaction and settlement of the controversy. The answer alleges that in pursuance of that agreement said defendants and their wives, on or about December 15, 1899, conveyed to complainant the said eighty-acre tract and the deed therefor was delivered to and accepted by him; that in pursuance of said settlement and compromise the said suit was, at the September term, 1900, of the circuit court of Lee county, dismissed by complainant, and defendants thereafter remained in possession and control of the remainder of the said premises. The answer denies that complainant is entitled to the relief prayed or any part thereof.

After replication filed, the cause was referred to the master in chancery to take proof and report his conclusions. The master reported that the conveyance from complainant to Johnson and Avery was intended as security for the payment of the sum advanced complainant by defendants to redeem the land from foreclosure sale, and that said deed was, in equity, a mortgage. The master further reported that after the bill was filed, in 1899, a settlement and compromise was agreed upon by complainant and Johnson and Avery, in pursuance of which said defendants executed and delivered to complainant a warranty deed about December, 1899, conveying to him the north half of the north-west quarter of section 11; that said deed was never recorded, but that it was executed, delivered to and accepted by complainant in satisfaction and discharge of the amount loaned him by Johnson and Avery and of all matters in controversy between them regarding said transaction. The master further reported that the tax deed to Fordham was invalid; that he acquired no title thereby; that Johnson and Avery acquired no title by the conveyance from Fordham; that Johnson and Avery had had possession of said eighty-acre tract and collected the rents and profits therefrom from the time of the conveyance to them by Fordham; that they were liable to account to the complainant for said rents and

profits after deducting the expenses, repairs and taxes paid, and that there was due complainant, after making said deductions, the sum of $641.87. The master also found that complainant was not barred from asserting his right and claim by *laches*.

Both complainant and defendants objected to the master's report. These objections were overruled and were renewed as exceptions by both parties before the court. The exceptions were overruled and a decree entered substantially in conformity with the finding and report of the master. From that decree the complainant has prosecuted this appeal.

JOHN W. BEEMER, and WILLIAM H. WINN, for appellant.

J. W. WATTS, and BROOKS & BROOKS, for appellees.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

The evidence in this case presents a remarkable state of affairs. On June 17, 1899, complainant was the owner in fee simple of two hundred acres of land, worth at that time not less than $90 per acre, or $18,000, which was encumbered by a certificate of purchase issued under a sale in a foreclosure proceeding, and $4763.63 was all that was required to redeem the land from said sale. Entertaining the erroneous impression that he had fifteen months from the day of the foreclosure sale to redeem therefrom, complainant was about to let the twelve months allowed him by law for that purpose expire without redeeming the premises. On the last day of the twelve months allowed him for redemption complainant was informed by defendant Johnson that he had only twelve months from day of sale in which to redeem and that the twelve months expired on that day. Thereupon complainant went to the office of Johnson and

Avery, in Dixon, where he executed a deed to Johnson and Avery for the entire two hundred acres of land and they advanced the money ($4763.63) with which the redemption was made. It is absolutely clear that the conveyance to Johnson and Avery of the $18,000 worth of real estate was not an absolute conveyance of title. The money advanced to complainant to make the redemption was only about one-fourth the value of the land, and although Johnson and Avery claimed the conveyance was an absolute one and was not given as security for the money they advanced to make the redemption, the proof shows conclusively that the deed was made as security for the money advanced by them, and was not intended by the parties, at the time, to vest in the grantees the absolute title. While there was nothing whatever in the circumstances attending the making of the deed by complainant to Johnson and Avery to justify their claim that they had purchased the land outright, they appear to have at once set up such claim. In July, 1899, the complainant filed a bill against Johnson and Avery, in which he alleged, substantially as in the bill in this case, that they held the title as security for redemption money advanced him, and praying that the deed be decreed to be a mortgage and that he be permitted to redeem therefrom. He was taken to the office of the attorney who filed the bill by H. L. Fordham, who is not a party to this suit. Complainant testified he did not employ the attorney, but the proof shows that he must have known of the filing of the bill and the pendency of the suit, for while it was still pending negotiations were entered into by said defendants with him for a settlement of the litigation. Finally, in December, 1899, said defendants and their counsel met complainant and his counsel at the latter's office in Dixon and delivered to complainant's counsel, who has no connection with the present litigation, a warranty deed for the north half of the north-west quarter of section 11. Complainant was present at the time, and although the deed was not de-

livered to him personally, said defendants, and the attorney who represented them, testified that the matter of the settlement, and its nature, was talked of at the time, and that the deed was delivered to complainant's attorney for him and was a consummation of the compromise that had been previously agreed to between the parties. Complainant admits he was present; that he saw the deed delivered to his attorney, but says he never read it and never accepted it. He testified there was talk at the time about making the deed; that his attorney might have agreed to it but that he did not. He further testified that the deed was delivered to his attorney in his presence and that he made no objections; that defendants wanted him to take another eighty, but he wanted the eighty in question. He testified he would have executed a deed then, but that "when they wanted to play roots on me I wouldn't do it." There is no proof that he ever had the deed in his possession, and when he left his attorney's office the deed remained there. Some time afterward the attorney gave the deed to H. L. Fordham and asked him to take it and deliver it to complainant. When Fordham offered to deliver the deed complainant refused to accept it. Fordham lost the deed and it was never placed on record. At the September term, 1900, of the Lee county circuit court the record shows the solicitor who brought the suit for complainant in 1899 withdrew his appearance, and on motion of defendants' solicitors the suit was dismissed at complainant's costs. In July previous to the dismissal of that suit Fordham acquired a tax deed to the north half of the north-west quarter of section 11. He at once took possession by requiring the tenant on the land to attorn to him, and remained in possession until he sold it, in 1904, to Johnson and Avery. Johnson and Avery had possession of the other one hundred and twenty acres until they sold it, and were in possession of the eighty acres mentioned from the time they received the deed from Fordham till the commencement of this suit. Complainant had knowl-

edge of these facts, but through stubbornness or stupidity took no steps to protect his rights until this bill was filed on the 28th of June, 1907. Complainant's counsel assert that he is a man of peculiar characteristics and disposition. He is a bachelor, now about sixty-five years of age, but it is not claimed that he is *non compos mentis* or incapable of understanding and transacting ordinary business. He was certainly obstinate and stubborn and slow to move in the assertion of his rights.

The defendants Johnson and Avery do not now rely upon the claim that they purchased the land outright, but rely upon the settlement and compromise made while the suit was pending, in 1899. The master found and reported that the deed to the north half of the north-west quarter of section 11 was duly executed and acknowledged by said defendants and their respective wives; that it was delivered by them to complainant and accepted by him in full satisfaction and discharge of all matters in controversy between him and said defendants regarding the transaction of the conveyance of the two hundred acres to Johnson and Avery. The court found and recited the same thing in the decree, and also that by virtue of said settlement and conveyance of said eighty-acre tract defendants Johnson and Avery became the absolute owners of the other one hundred and twenty acres, and that the complainant became the owner of and vested with the legal title in and to the north half of the north-west quarter of section 11. The weight of the proof tends to support these findings, and although it was an absurd settlement for complainant, yet if he agreed to it, courts are powerless to set it aside. We would not be warranted in disturbing the decree in that respect. No complaint is made of that portion of the decree setting aside the tax deed to Fordham and the conveyance from him to Johnson and Avery and fixing the amount they should pay complainant for the use and occupation of said eighty acres.

It is urged that the court erred in decreeing that complainant pay one-third of the costs; but we are of opinion, in view of the relief sought by the bill and that granted by the decree, the court did not err in this respect.

The decree of the circuit court is affirmed.

*Decree affirmed.*