Frank Dunaway *et al.*, Plaintiffs and Counterdefendants-Appellees, *v.* Ervin L. Storm *et al.*, Defendants and Counterplaintiffs-Appellants.

(No. 74-169;

Fifth District—July 1, 1975.

*Rehearing denied September 3, 1975.*

William L. Turner, of Shelbyville, and Richard F. Record, Jr., of Craig & Craig, of Mattoon (Jack E. Horsley and John H. Armstrong, of counsel), for appellants.

Glen A. Featherstun, of Armstrong, Winters, Prince, Tenney, Featherstun & Johnson, of Decatur, for appellees.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

The defendants-counterplaintiffs, Ervin Storm and Hazel Storm, appeal from a judgment of the circuit court of Shelby County construing and modifying a consent decree, holding them in contempt for violation of that decree and awarding attorney fees to the plaintiffs.

The plaintiffs initiated this proceeding to enforce a decree of injunction entered June 7, 1972, and to construe a portion of that decree or in the alternative to modify it, if necessary. The decree of June 7, 1972, had been entered by consent of the parties and had provided for a mandatory and prohibitive injunction of a continuing nature. The circuit court of Shelby County construed the decree, specified certain elevations for a drainageway, and in doing so modified the decree to that extent. The court also held the defendants in contempt of court and assessed fines and attorney fees.

The issues presented for review are (1) did the trial court err in construing the decree, determining its intent and then modifying particular terms to accomplish the result contemplated by the decree when considered as a whole; (2) were defendants in wilful contempt of court; and (3) was the trial court authorized to assess attorney fees against defendants?

The plaintiffs Frank and Frieda Dunaway own a 200-acre farm located immediately north of defendants' 80-acre farm, with a common boundary of a quarter of a mile. An apparently natural drainage ditch running north to south crosses the boundary between the farms at a point designated as "X" in the trial court exhibits. In 1969, defendant Ervin Storm removed a fence line between the properties, piling brush, trees and dirt south of "X", creating a brush pile approximately 150 feet long and 20 to 40 feet wide. Prior to June 1972, Storm testified that he observed only a small amount of water making its way around the pile.

In August 1970, the plaintiffs filed suit alleging that the defendants had constructed a dam south of "X," obstructing the natural drainage from their land and causing water to back up and damage their crops. The defendants counterclaimed alleging that plaintiffs had increased the amount of water flowing onto defendants' land.

On June 7, 1972, the parties entered into a stipulation and agreement, resulting in a decree of the same date by the circuit court of Shelby County. The decree provided that a ditch on plaintiffs' land was the course of natural drainage by prescription and allowed for its maintenance at current levels. In order to provide plaintiffs temporary relief,

the Storms were to remove a 12-foot section of the dam not later than June 24, 1972, to allow natural drainage through the pile. In paragraph 5 of the decree, the Storms were directed to remove the brush pile to permit unimpeded drainage from point "X" across the northeast corner of the Storms' land to a point designated as "Y." The elevations to be maintained were specified as not more than 593.20 feet at point "X," 592.45 feet at a point 54 feet to the south and 590.91 feet at a point 955 feet south of the boundary. Work was to be completed not later than November 30, 1972. In paragraph 6, the defendants were further "enjoined from obstructing the natural drainageway running from Point 'X' [through the defendants' land] through said drainageway in the future." The decree also stated that it was enforceable by citation proceedings.

On July 27, 1973, plaintiffs filed a petition to show cause claiming non-compliance with the terms of the decree, resulting in crop losses and the expenses of additional attorney fees. The defendants filed an answer followed by plaintiffs' petition of September 18, 1973, to construe, or in the alternative, to modify portions of paragraph 5 of the decree of June 7, 1972, so that the elevation of point "X" would not impede the natural drainage of plaintiffs' land. Defendants moved to strike and dismiss, but the motion was overruled. The defendants answered plaintiffs' motion and combined hearings were held on the petition to show cause and petition to construe or modify.

Testimony at the hearing revealed that defendants completely failed to comply with the June 7 decree within the time limits set forth and at best only technically complied with it thereafter. Frank Dunaway testified that in June, 1972, the pile was burned and a section removed, but it remained higher than "X." In August, water backed up on the Dunaway farm following heavy rains. On August 28 the Dunaways' lawyer wrote the Storms' attorney demanding compliance with the decree. There was testimony that the area north of "X" remained water-laden for a considerable period, preventing plaintiffs from harvesting crops until November. In November water again backed up on the Dunaway property.

During November 1972 Storm cut a small channel through the brush pile. He testified that he did this in order to allow water to flow from the plaintiffs' land and remarked that it had backed up. Nevertheless, water backed up again the following spring. Plaintiffs' attorney wrote the defendants' attorney in December 1972 and May 1973 demanding compliance with the decree. Later in May the Storms had the pile leveled and spread out over a larger area. The plaintiffs' expert testified that when he examined the drainage ditch in June, the leveled pile created a long gradual rise in the elevation of the land south of "X." Plaintiffs' attorney sent another letter, but once again flooding occurred in June. The defen-

dants' expert surveyed the area in June and supervised further work performed on October 18, 1973. No other work was done.

After completion of the work, the defendants' expert surveyed the area. He stated that defendants had complied with the specific elevations set forth in the decree, but that the land sloped upwards for a distance south of "X." The plaintiffs' expert surveyed the area after the defendants had finished work. He testified that the land still rose in elevation and that defendants had not lowered the area to the elevations specified in the decree. He also testified, however, that even if the defendants had complied exactly with the terms of the decree, water would still back up on the plaintiffs' land. He stated that the land south of "X" could be no higher than 592.35 but the decree allowed for elevations between 593.20 and 592.45 feet for a considerable distance south of "X." The plaintiffs' expert testified that he became aware of this fact in November 1973. Water backed up again north of "X" in 1973, and January of 1974.

Plaintiffs testified that there was crop damage north of "X" in 1972 and 1973. The plaintiffs' attorney testified that he had billed plaintiffs $3,436.90 for services from June 21, 1972, through February 1, 1974.

The defendant, Ervin Storm, testified that he understood that the injunction required him to give immediate relief. He said that he had contacted a bulldozer operator he had employed, but that the wetness of the ground, his desire not to disturb growing crops or those planted in the fall, and the operator's inability to have the machines available, combined to delay the leveling of the pile until May, 1973. He also admitted that he owned a bulldozer for a period after June 7, 1972. When he cut a channel through the pile in November, 1972, he said he used an eye level to check the elevation, and he believed that he had complied with the decree. Storm testified that he later realized he was going to have to lower the area and did so with the help of the surveyor who testified on his behalf. He also testified the he was taking more water than prior to June 7, 1972, causing crop damage. Storm said that plaintiffs had directed water toward the area by chisel plowing, but admitted that a chisel plow was a normal farming tool.

The court's order of February 25, 1974, stated with regard to the petition to modify that it was the clear intention of the decree of June 7, 1972, that water be allowed to drain across the Storms' property from point "X" to point "Y," that the elevation of "X" as of October 1973 was 592.45 feet, that there was an unnatural fill for 50 feet south of "X," that the decree of June 7, 1972, should be modified by substituting 592.45 feet instead of 593.2 feet for the elevation of "X" and directing that an elevation below 592.45 feet be maintained for all points between "X" and "Y." As to the citation, the court held that the Storms had made no responsible move

to comply until October, 1973, and were thus in wilful contempt, levied a fine of $100, ordered defendants to pay the clerk $1,000 toward plaintiffs' attorney fees and assessed costs against the defendants.

■■ Appellants first contend that the circuit court erred in construing a clear, specific agreement not in need of construction. They argue that a consent decree has the nature of a contract as well as that of a decree. It is a contract entered into by the solemn sanction of the court and like any other contract should be enforced as written. (*American Tar Products Co. v. Bradner Smith & Co.*, 238 Ill.App. 151.) In this case, the decree specified the elevations for the drainage ditch. Thus, the appellants argue that the decree was not ambiguous and their motion to strike the petition to construe should have been granted. The appellants are correct that taken separately, the provisions of the decree are not ambiguous; however, the rule for construction of decrees is that they should be construed as a whole, including consideration of other parts of the record, the pleadings and the issues. (*Western Theological Seminary v. City of Evanston*, 34 Ill.App.2d 162, 180 N.E.2d 752.) Paragraph 4 of the decree provided for temporary relief from impoundment of water on plaintiffs' land pending completion of the permanent work ordered by paragraph 5. Paragraph 5 provided that the Storms remove and bury the brush pile "so as to allow an unimpeded flow of water" from the Dunaways' land across the Storms' farm through the ditch, and that "the grade of the drainageway shall be uniformly sloped downward from Point X to Point Y, allowing a southeasterly flow of surface water into the flow line of the drainageway which shall not be higher than the following elevations [the specific elevations relied on by the defendants]." In paragraph 6 the court permanently enjoined the defendants "from interfering, impeding or holding back the drainage or surface water from [the Dunaway farm] through said drainageway in the future." The substance of the decree was to enjoin the defendants from continuing to back up water on the plaintiffs' farm.

It, therefore, appears that the circuit court could have given plaintiffs the relief they sought solely by means of construction. The appellants do not challenge the power of the court to construe the decree in order to enforce it, but instead argue that the court said it was responding to a petition to modify and did in fact modify and amend it. The appellants argue that this was error. A consent decree should be enforced as written, is conclusive upon the parties and cannot be varied without the consent of each party. (*People ex rel. Stead v. Spring Lake Drainage and Levee District*, 253 Ill. 479, 97 N.E. 1042; Filosa v. Pecora, 18 Ill.App.3d 123, 309 N.E.2d 356; *American Tar Products Co. v. Bradner Smith & Co.*, 238 Ill.App. 151; *cf. Material Service Corp. v. Hollingsworth*, 415 Ill. 284, 287, overruled on an unrelated point; *G. S. Lyon & Sons Lumber & Manufac-*

*turing Co. v. Department of Revenue,* 23 Ill.2d 180.) The order stated:

"1. As to the petition to modify:

(a) It was the clear intention of the decree of June 7, 1972 that water received at Point X as indicated on Exhibit 1 to said decree should be given an exit at Point Y as indicated on Exhibit 1 to said decree.

(b) Point X as indicated on the decree of June 7, 1972 had an elevation of 592.45 feet above sea level in October, 1973.

(c) There is an unnatural fill for at least fifty feet to the south of Point X as indicated in the decree of June 7, 1972.

(d) The decree of June 7, 1972 should be modified by substituting the figures 592.45 instead of 593.2 in paragraph 5A, and by amending 5B to read:

'B. An elevation below 592.45 feet at all points between Point X and Point Y'."

■■ The plaintiffs sought construction and modification of the decree. The court appeared to have construed the decree, determining its intent, and then modified particular terms to comply with the intent of the whole. In the original decree, the precise elevations were "not to be higher than the following elevations * * *." The specific elevations appeared to be incidental to the decree's directives, merely intended as ceiling elevations as the language suggests. Given the decree's clear objective of allowing drainage of the plaintiff's land, the decree could only be given meaning by construing it to require that elevations be maintained that would accomplish the desired result. Such a construction could not in reason be deemed to have changed the intent or meaning of the decree. Notwithstanding some of the language contained in the court's order of February 25, 1974, the effect of the order was to construe rather than modify the earlier decree.

The appellants also contend that they were not in wilful contempt because they had substantially complied with the decree of June 7, 1972, by the time of the hearing in February, 1974. The testimony summarized above shows that the appellants had done virtually nothing by November 30, 1972. The court found that the appellants made "no responsible move to comply with the decree" until October 1973, almost a year after the appellants were supposed to have completed work on the drainage ditch. Even then, there was testimony that water continued to back up on the plaintiffs' land. Having failed to act despite the appellee's repeated requests for compliance, the appellants clearly violated the decree.

■■ Appellants attempt to excuse their inaction by asserting that they in good faith tried but were unable to comply for a period of a year and a half. Persons attempting to justify noncompliance with court decrees

due to inability to perform must prove inability by definite and explicit evidence. (*First National Bank & Trust Co. v. Desaro*, 43 Ill.App.2d 153.) There was testimony that for some time after June, 1972, the defendant Ervin Storm owned a bulldozer, that he called only one operator to bulldoze the ditch and that there was a 2-week dry spell in October, 1972, when the work could have been done. Even without this testimony, it is difficult to believe that if appellees really attempted to comply, that they were unable to do virtually anything before May 1973. Moreover, it is clear that they never complied with the order by allowing drainage of the plaintiffs' land. The appellants were in wilful contempt.

■■ Appellants next contend that the circuit court improperly assessed $1,000 in attorney fees against the appellants. Appellants correctly state the Illinois rule that absent a statutory provision or contract authorizing assessment of attorney's fees, attorney's fees may not be assessed against a party in chancery. (*Ralston Purina Co. v. Killam*, 10 Ill.App.3d 397, 293 N.E.2d 750; *Rasch v. Rasch*, 278 Ill. 261; *Metropolitan Life Insurance Co. v. Kinsley*, 269 Ill. 529; *Andrew, Recovery of Attorneys' Fees and damages in Civil Contempt Proceedings in Illinois*, 47 Chi.-Kent L. Rev. 211.) In this case there is no contract or applicable statute. The circuit court's award of attorney's fees was error.

For the reasons stated, the order of the circuit court is affirmed in part and reversed in part, and the cause is remanded for proceedings consistent with the views expressed in this opinion.

Affirmed in part, reversed in part and remanded.

JONES and CARTER, JJ., concur.