THADDEUS S. PIERCE, M.D., *et al.*, Plaintiffs-Appellees, *v.* THE MacNEAL
MEMORIAL HOSPITAL ASSOCIATION *et al.*, Defendants-Appellants.

First District (1st Division)　No. 76-526

Opinion filed February 14, 1977.

SIMON, J., specially concurring.

Wesley G. Hall, Thomas P. Sullivan, Arthur M. Martin, Jeffrey D. Colman, and Eugene R. Wedoff, all of Chicago (Jenner & Block and Schuyler, Stough & Morris, of counsel), for appellants.

N. A. Giambalvo, James W. Collins, and Lawrence M. Gavin, all of Chicago, (Boodell, Sears, Sugrue, Giambalvo & Crowley, of counsel), for appellees.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

In this rather unusual piece of litigation, one participating group (defendants) seeks to avoid a conditional settlement agreement incorporated within a consent decree. The principal defendant, The MacNeal Memorial Hospital Association (Hospital), was organized in 1919; reorganized in 1931 and adopted its present name in 1962. It is subject to the General Not For Profit Corporation Act of Illinois (Ill. Rev. Stat. 1975, ch. 32, par. 163a *et seq.*). There are four individual defendants; all of them are members of the Hospital's Board of Directors. They constitute a majority and a quorum of the board and serve without compensation. The seven plaintiffs are all doctors and life members of the Hospital. They filed this suit as a class action in behalf of all life members.

The dispute appears to center upon the voting rights of life members of the Hospital corporation under the bylaws. Prior to 1974, the bylaws provided for nomination and election of directors by the membership, composed of regular, life and honorary members. On December 17, 1974, the directors adopted a comprehensive revision of the bylaws. The bylaw which is material here, and which precipitated the instant litigation, provided as a part of Article IV pertaining to membership:

"*Section 7. Voting Rights.* Members of the corporation shall have no voting rights."

Plaintiffs' complaint, filed January 10, 1975, alleged that, by the December 17, 1974, amendment, the defendants had acted "to deprive plaintiffs of all voting rights * * *" in violation of the contractual rights of plaintiffs. In a second count, plaintiffs asserted that the individual defendants had thus breached a fiduciary duty. The complaint

sought injunctive and other relief. Defendants filed a motion for summary judgment and plaintiffs responded with objections. The parties submitted various memoranda on the propriety of summary judgment.

On November 26, 1975, the parties filed a joint motion informing the court that they had entered into a "Stipulation of Settlement and Compromise." A copy of the settlement stipulation, dated November 26, 1975, was appended to the motion. The stipulation recited the parties' conditional agreement to the adoption of a new set of bylaws in full settlement and discharge of the suit. A copy of the proposed bylaws was attached to the agreement. The conditions to the effectiveness of the bylaws, and thus to the entire settlement, were that "on or before December 31, 1975, or such later date on or prior to January 31, 1975 [sic] as may be fixed by the Hospital's Board of Directors, there shall be full compliance with all of the terms and conditions set forth in the [attached] resolution * * *." The resolution, which had been adopted by the Hospital directors on October 28, 1975, prescribed three conditions which will be examined in detail later in this opinion. Briefly, these conditions required approval of the proposed amendatory bylaws and election of directors by the Hospital medical-dental staff; receipt by the Hospital of a written opinion from the law firm of Chapman and Cutler to the effect that the directors could act according to the terms of section 7 of Article VI of the proposed bylaws "without any vote of the members"; and, finally, that the case be disposed of with prejudice to the claims of plaintiffs' class "in a manner satisfactory to legal counsel to the hospital."

In areas relevant to this appeal, the proposed settlement bylaws expanded the life members' representation to 100% of the nominating committee which was to select candidates for directorships. Also, life members were given the right to vote on changes in the articles of incorporation or bylaws which would alter the representation, voting or nominating rights of life members or the medical-dental staff. All other voting rights were expressly denied all members of the corporation.

On November 26, 1975, the court entered an order finding, for the purposes of settlement only, that the action was a proper class action and that plaintiffs were members of and represented the class; ordering notices of a hearing to consider fairness of the proposed settlement to be sent to all class members and setting this hearing for December 11, 1975. The notices which were sent to all members of the class pursuant to this order contained summaries of the background of the litigation and the terms of the proposed settlement and stated that any class member could appear at the hearing to object to the fairness of the settlement or to withdraw from the class and not be bound by the disposition of the suit. In due course, four persons withdrew from the class; two of them additionally stating an intention to appear to contest the proposed settlement.

At the hearing on December 11, 1975, one of these objectors, who had served notice of dissent upon all counsel, appeared and contested the fairness of the settlement and the adequacy of plaintiffs' representation of the class. After hearing statements of counsel, the court entered an "Order Approving Settlement" which overruled the objections of all the class members who had elected to withdraw, approved the settlement as a "fair compromise" and provided that all class members, except those who had objected and withdrawn, were bound by the settlement agreement and the order. In accordance with the stipulation of settlement, the order further provided:

> "D. If the Settlement Agreement shall not be consummated for any reason whatever, or if, after entry, any attack by appeal or otherwise is made upon this order, the Settlement Agreement shall have no further force and effect. In the event this settlement is not fully consummated on or before February 1, 1976, then and in that event the Settlement Agreement shall be void and no longer binding upon the parties, and this order shall be vacated and set aside as of the date of its entry and this suit shall continue to be prosecuted. * * *.
>
> * * *
>
> F. The Court retains jurisdiction solely for the purposes of supervising and enforcing the consummation of the Settlement Agreement and vacating this order and reinstating this cause if the Settlement Agreement is not fully consummated on or before February 1, 1976."

The order dismissed the cause "on the merits with prejudice as to all members of the class" subject only to said paragraph F. The order was signed "Approved" by counsel for all parties.

On December 24, 1975, defendants filed a "Motion To Vacate Order Approving Settlement." The sole ground expressed in this motion pertained to the condition of satisfaction by counsel for the Hospital with the disposition of the suit. Defendants alleged that this condition could not be met on or before December 31, 1975, because objections to the settlement had been filed "and an appeal could be taken from the order approving the settlement, or the order could be otherwise attacked after December 31, 1975." The motion further stated that on December 22, 1975, the Hospital directors had voted not to extend the time for fulfillment of this condition beyond December 31, 1975.

Plaintiffs filed an answer which quoted portions of the settlement agreement and decree which had set February 1, 1976, as the final date for full consummation of the settlement. Plaintiffs alleged that the February 1 date superseded and amended the deadlines of December 31 and January 31 for fulfillment of the three conditions. After hearing argument of counsel, the court denied the motion on January 5, 1976. The order

provided "that defendants may renew said motion in the event of an appeal from the order of this court entered December 11, 1975."

On January 9, 1976, defendants filed a "Motion To Reconsider Refusal To Vacate Order Approving Settlement." Defendants alleged that only one of the three conditions that qualified the settlement had been met, referring to the requirement that the medical-dental staff consent to the settlement bylaws. No facts were pleaded to supply a basis for the implied conclusion that the condition relating to the written opinion from Chapman and Cutler had not been met. Defendants further alleged that because of the withdrawals from the class and because several notices of the settlement had been returned undelivered, the settlement was subject to attack "even if consummated and the status of those who are not, or could claim they are not, bound by the settlement remains open to argument." The motion then quoted paragraph D of the order of December 11, 1975, concerning failure to consummate the settlement "on or before February 1, 1976." The motion further stated: "In view of the foregoing, it cannot be said that this case is or can be satisfactorily disposed of or that the Settlement Agreement can be fully consummated before February 1, 1976." Defendants also alleged that on December 22, 1975, the Hospital directors had voted not to extend the December 31 deadline for performance of conditions. Plaintiffs filed no written response and orally moved that their answer to the previous motion stand against the motion to reconsider. After argument of counsel, the motion to reconsider was denied on January 14, 1976. Defendants appeal from the orders of January 5 and 14, 1976.

In this court, defendants contend that reversal of the orders is necessary because they nullified the express valid conditions of the settlement agreement which had been entered with the court's approval; the orders are appealable and the trial court erred in failing to approve the defendants' version of a bystander's report of proceedings for the hearing of December 11, 1975. Plaintiffs urge that the December 11 order is a nonappealable consent decree; defendants' motion to vacate was based on a single condition which had been fully satisfied and constituted a waiver of any other conditions; defendants may not assert nonfulfillment of conditions resulting from their own failure to perform; the two motions were premature because filed before February 1, 1976, and the motion to reconsider did not alter defendants' position. Plaintiffs assert further that consummation by February 1, 1976, was rendered impossible by defendants' conduct; the order certifying the report of proceedings for December 11, 1975, was in compliance with Supreme Court Rule 323(c) and the bystander's report is irrelevant to the appeal.

■■ At the outset, we note that the order of December 11, 1975, served two functions. The court rejected the contentions of the objectors concerning the adequacy of plaintiffs' representation of the class and the

merits of the settlement and approved the fairness of the settlement. (See Ill. Rev. Stat. 1975, ch. 110, par. 52.1.) The court also recorded the agreement filed on November 26, 1975, as the compromise and settlement of the suit. The parties requested the court's approval and by their counsel signed the decree as "Approved." No suggestion was made on December 11 that the agreement did not reflect the terms of the settlement that had been reached. We conclude that the order affirming and incorporating the settlement agreement by reference, approved by counsel for plaintiffs and defendants, was not a judicial determination of the rights of the parties but was a consent decree. *City of Des Plaines v. Scientific Machinery Movers, Inc.* (1972), 9 Ill. App. 3d 438, 442-43, 292 N.E.2d 154; *Jackson v. Ferolo* (1972), 4 Ill. App. 3d 1011, 1014, 283 N.E.2d 247.

■■ It is correct, as plaintiffs contend that, as a general proposition, a consent decree is not appealable since it does not constitute a judicial resolution of the rights of the parties but is merely a recordation of their private agreement. (See, *e.g., Bergman v. Rhodes* (1929), 334 Ill. 137, 143, 165 N.E. 598.) Reasoning from this premise, plaintiffs urge that, in substance, defendants' motions were attacks upon the consent decree itself so that this appeal should be dismissed. This argument is not persuasive because the motions made by defendants were not directed against the terms of the settlement but rather relied on those very terms in urging that express conditions thereof had not been fulfilled. In addition, the defendants' motions were predicated upon matters arising after entry of the consent decree and were made pursuant to the express decretal reservation of jurisdiction by the trial court for supervision of performance of the settlement. At most, both of these motions requested the court to construe the terms of the settlement in the light of the facts alleged. Construction of a consent decree, as distinguished from modification thereof, has been given judicial sanction. (See *Dunaway v. Storm* (1975), 30 Ill. App. 3d 880, 884-85, 334 N.E.2d 825.) The motion of defendants to dismiss the appeal, taken with the case for decision, is accordingly denied.

The controversy here logically divides itself into two topics:

I.
Receipt Of The Advisory Legal
Opinion by Defendants.

Defendants assert that the trial court erred in overlooking breach of the condition requiring a confirmatory written opinion from Chapman and Cutler. This argument is based upon the unsubstantiated premise that failure of that condition was properly presented to the trial court by the defendants' motion to reconsider. Generally speaking, an issue not

presented to or considered by the trial court cannot be raised by an appellant for the first time on review. (*Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 147, 324 N.E.2d 417.) The defendants' motions and the transcripts of the related hearings convince us that the issue of breach of this condition was not properly raised as an issue in the trial court.

In the record before us, the only reference to the Chapman and Cutler condition was the conclusory statement in defendants' verified motion to reconsider that approval of the settlement bylaws by the medical-dental staff was the only one of the three conditions which had been met. By its terms, the Chapman and Cutler condition could readily be considered breached upon two divergent factual grounds, both consistent with this statement, including nonreceipt of any opinion or receipt of an opinion registering the firm's disapproval of the legality of the designated provisions of the settlement bylaws. No facts concerning these matters were pleaded in defendants' motion to reconsider.

■■ The conclusory and ambiguous statement in defendants' motion to reconsider was insufficient to raise the issue of breach of this condition in the trial court. No evidence of any kind concerning this situation was offered by defendants. Defendants could not obtain relief in the trial court in the absence of both pleading and evidence. (*Broberg v. Mann* (1965), 66 Ill. App. 2d 134, 137-38, 213 N.E.2d 89, and authorities there cited.) It is impermissible for defendants to depend upon one theory exclusively in the trial court and then attempt to prevail in this court upon a different theory not previously raised. (*Kravis,* 60 Ill. 2d 141, 147-48; *Broberg,* 66 Ill. App. 2d 134, 138.) It is therefore our opinion that any alleged breach of the Chapman and Cutler condition had been waived by defendants and is accordingly unavailable to them in this appeal.

Quite aside from the issue of waiver, we find defendants' position untenable. As regards the Chapman and Cutler condition, the settlement agreement could become effective only if the Hospital, on or before December 31, 1975, or such later date on or prior to January 31, 1976, as might be fixed by its directors, "receives from Chapman & Cutler, attorneys at law, Chicago, Illinois, their written opinion that after the effective date of the bylaws hereby adopted, the Board of Directors of this corporation may take any of the actions for which provision is made in Section 7 of ARTICLE VI of said bylaws without any vote of the members of the corporation, * * *." As shown, defendants' motion to vacate the settlement order alleged that the directors had voted not to extend the time beyond December 31, 1975.

■■ ■ As defendants correctly maintain in this court, the determination of the intention of parties to a settlement agreement is governed by principles of contract law. (See, *e.g., Miltimore v. Ferry* (1897), 171 Ill. 219, 225, 49 N.E. 219; *Sontag v. New York Life Insurance Co.*

(1940), 305 Ill. App. 405, 416-19, 27 N.E.2d 628.) A consent decree merely records a settlement contract between the parties. Therefore, the law of contracts controls the interpretation of a consent decree and its meaning is to be determined, if possible by the language chosen by the parties. *Filosa v. Pecora* (1974), 18 Ill. App. 3d 123, 127, 309 N.E.2d 356, *appeal denied,* 56 Ill. 2d 582; *Board of Education v. Falk* (1972), 8 Ill. App. 3d 696, 699, 290 N.E.2d 667, *appeal denied,* 53 Ill. 2d 605.

Nothing in this record shows that defendants actually received a negative or adverse opinion from Chapman and Cutler either before or after December 31, 1975. There was, therefore, no failure of the stated condition on these grounds. The basis of defendants' contentions then becomes the simple fact of their failure to receive the opinion within the designated time. However, the matter cannot rest upon the mere issue of lapse of time.

■■■ During oral argument both parties stated their willingness to stipulate that the matter was actually submitted to Chapman and Cutler. We assume *arguendo* that this was the case and further that the submission by the Hospital conformed to the express condition by including the requirement that the opinion be rendered by December 31, 1975. The engagement of this law firm by the Hospital created an attorney-client relationship governed by principles of agency law. (See generally *Feiertag v. Reichmann* (1959), 21 Ill. App. 2d 215, 220, 157 N.E.2d 818; *cf. People v. Novotny* (1968), 41 Ill. 2d 401, 408, 244 N.E.2d 182.) Although Chapman and Cutler were not attorneys of record for the defendants, their participation was central to the progress of the settlement as supervised by the court. The nexus between the executed and judicially approved settlement and the submission of the matter to the designated law firm was sufficient to invoke the principle that a client is responsible for the acts or omissions of his attorney during the course of litigation. *Cf. Danforth v. Checker Taxi Co., Inc.* (1969), 114 Ill. App. 2d 471, 476, 253 N.E.2d 114; *Bartolini v. Popovitz* (1969), 108 Ill. App. 2d 89, 94-95, 246 N.E.2d 834.

■■ In effect, through the inaction of their own attorney, the defendants participated in the hindrance of the condition and they may not now claim the benefit of failure of the required event. (*Yale Development Co. v. Oak Park Trust & Savings Bank* (1975), 26 Ill. App. 3d 1015, 1020, 325 N.E.2d 418; *Eggan v. Simonds* (1962), 34 Ill. App. 2d 316, 320, 181 N.E.2d 354.) Although these authorities involved deliberate conduct by a party, the distinction does not alter the result where, as in the instant case, an agent is responsible for the obstruction of the condition.

The existence of an agency relationship sets this case apart from the

decisions cited by defendants for the principle that parties may make timely performance by a third person an essential part of a contract. In *Friedman v. Winshall* (1955), 343 Mich. 647, 73 N.W.2d 248, the conditioning event was the installation of water or sewer lines by the city, not by a third person hired by either party. In *King v. Stevenson* (7th Cir. 1971), 445 F.2d 565, an option contract provided that three appraisers would set the price for stock if no market existed. The dictum relied on by defendants, that the option would be void upon failure of the appraisers to agree if the parties had so provided, does not aid defendants' position because the appraisers were not in the initial control of either party.

Finally, as a matter of law, every contract includes a duty of good faith and fair dealing. "Even though the express words are absent, performance in good faith will be implied by the court." (*Dasenbrock v. Interstate Restaurant Corp.* (1972), 7 Ill. App. 3d 295, 300, 287 N.E.2d 151, *appeal denied,* 55 Ill. 2d 601.) In *Martindell v. Lake Shore National Bank* (1958), 15 Ill. 2d 272, 286, 254 N.E.2d 683, the supreme court stated the principle as follows:

> "Every contract implies good faith and fair dealing between the parties to it, and where an instrument is susceptible of two conflicting constructions, one which imputes bad faith to one of the parties and the other does not, the latter construction should be adopted. (12 I.L.P., Contracts, sec. 217.)"

■■ Rudimentary principles of good faith require the conclusion that the defendants were not granted power to terminate the agreement following the inaction of their own agents. Such conclusion belies the overall intention of the parties that the suit be compromised and the specified and legitimate purpose of the Chapman and Cutler condition, which was the acquisition of an expert opinion of one aspect of the legal results of the settlement. Upon the record before us, we cannot conclude that the Chapman and Cutler condition was not fulfilled.

## II.
### Disposition Of The Class Suit In A Manner Satisfactory To Counsel For Defendants.

The remaining issue is whether there has been a breach of the condition of disposition of the cause to the satisfaction of counsel for the Hospital. The pertinent condition states:

> "(c) the case entitled *Pierce, et al vs. MacNeal Memorial Hospital Association,* an Illinois not for profit corporation, et al, now pending in the Circuit Court of Cook County, as No. 75 CH

193, is disposed of, with prejudice to the claims of the class upon whose behalf the complaint states it was brought, in a manner satisfactory to legal counsel to the hospital."

In defendants' motion to vacate the order of settlement, the fact that objections had been filed to the proposed settlement was recited. This fact was realleged in defendants' subsequent motion to reconsider. Defendants there stated: "Thus the proposed settlement would be subject to attack even if consummated and the status of those who are not, or could claim they are not, bound by the settlement remains open to argument. * * * In view of the foregoing, it cannot be said that this case is or can be satisfactorily disposed of or that the Settlement Agreement can be fully consummated before February 1, 1976."

After the settlement agreement was entered on November 26, 1975, the case remained pending. In the decree of December 11, 1975, the trial court ordered that, subject to the court's supervision of the performance of the agreement, "this case is dismissed on the merits with prejudice as to all members of the class * * *." At the hearing concerning this order, as the order recites, certain objecting class members had withdrawn from the class and the court expressly overruled the objections of others. At that point, the case could not have been disposed of with prejudice to the claims of the entire class because, theoretically, the withdrawing objectors could appeal from or collaterally attack the order or could file a separate suit asserting the same deprivation of voting rights as had been originally claimed. Therefore, upon the withdrawal of the objectors, counsel for the Hospital could have asserted his dissatisfaction under the express language of the condition and could have refused to approve the order and the settlement, by its terms, could never have proceeded. Counsel did not act in this manner, however, but instead signed the consent order as "Approved" with full and complete knowledge of all of the facts which defendants now attempt to advance as a breach of condition.

In *John Kubinski & Sons, Inc. v. Dockside Development Corp.* (1975), 33 Ill. App. 3d 1015, 1020, 339 N.E.2d 529, this court used this language in defining the legal concept of waiver:

"In order that there may be a waiver of performance of the provisions of a contract in accordance with their terms, the facts and circumstances must show an intentional relinquishment of a known right, and the acts relied on must be inconsistent with an intention to insist on the rights of the party under the contract."

Counsel for defendants here intentionally relinquished a known right by approval of the consent decree with full knowledge of the facts. This approval was manifestly inconsistent with exercise by defendants of their

alleged right to terminate the settlement process because of breach of this condition.

■■ ■ In addition, it has frequently been held that conduct inconsistent with known rights "or which might reasonably be construed as showing that [the holder of the right] did not intend to avail [himself] of such provision is a waiver * * *." (*Hill v. Mercury Record Corp.* (1960), 26 Ill. App. 2d 350, 360, 168 N.E.2d 461. See also *Bartels v. Denler* (1975), 30 Ill. App. 3d 499, 333 N.E.2d 640; *Peterson v. United States Building Maintenance Co.* (1968), 96 Ill. App. 2d 398, 239 N.E.2d 322.) In the case before us the attorneys for defendants indicated their satisfaction with the settlement agreement, in the light of the facts then known to them. Since defendants thus evidenced their intention to dispose of the plaintiffs' case in this manner they cannot now claim that previously known facts permit them to avoid the settlement for failure of condition. We necessarily conclude that the alleged breach of this condition has been waived by defendants.

For purposes of completeness, we will attempt to reason from the premise that no waiver occurred. Defendants contend that the agreement and the settlement order permit the Hospital to rely on the previously accomplished withdrawal of the objectors on December 11, 1975, as grounds for dissatisfaction of their counsel. That is the position of the Hospital in the trial court and in this appeal. If such satisfaction was impossible at the very time the order was entered, it follows logically that the settlement agreement was *ab initio* incapable of consummation and was therefore a complete nullity; or, at the very least, that the parties all intended to vest in defendants' attorneys the complete right to unilateral termination of the agreement at any time. We cannot agree with either interpretation of the agreement and the order.

By the express terms of both the settlement agreement and the order the parties stated: "If the Settlement Agreement shall not be consummated for any reason whatever, or if, after entry, any attack by appeal or otherwise is made upon this order, the Settlement Agreement shall have no further force and effect." This language clearly provides for the contingency of an appeal or other attack upon the order as a condition subsequent to the settlement. The only reasonable construction is that the parties intended and agreed to protect the rights of defendants against any attack upon the order by "appeal or otherwise" prior to February 1, 1976. As a practical matter, it was only fair to protect defendants against frustration of the settlement by an appeal or other attack upon the order by dissenting members of the class. The able and careful trial judge recognized this as the order entered January 5, 1976, denying the motion of defendants to vacate, expressly gave defendants the right to renew the

motion "in the event of an appeal from the order of this court entered December 11, 1975." It does not appear from this record that any attack was ever made upon the settlement order by appeal or otherwise except only that made by defendants and currently in progress.

A contract must be reasonably construed so as to give effect to every term. It is presumed that each portion was inserted deliberately and for a purpose consistent with the overall intention of the parties. (See, *e.g.*, *Martindell v. Lake Shore National Bank* (1958), 15 Ill. 2d 272, 283, 154 N.E.2d 683.) Contractual terms will be construed to avoid the conclusion that other terms are redundant or meaningless. (*Home and Automobile Insurance Co. v. Scharli* (1973), 10 Ill. App. 3d 133, 136, 293 N.E.2d 914.) To accept the construction urged by defendants, we would necessarily be obliged to ignore and thus negate the very heart of this condition as above quoted.

■■ We conclude that the parties did not intend the fact that the objectors had previously withdrawn to be grounds for dissatisfaction of counsel for the Hospital after they had reaffirmed the language of the settlement agreement by entering the consent order with full knowledge of these facts. This record does not supply any concrete reason for the desire of defendants to avoid the settlement. The manner of disposition of the suit by the settlement order was originally to the satisfaction of all named parties as evidenced by their participation therein.

■■ Defendants finally contend that the trial court erred in refusing to certify defendants' version of a bystander's report of proceedings under Supreme Court Rule 323(c) (Ill. Rev. Stat. 1975, ch. 110A, par. 323(c)). This argument has no merit because, accepting defendants' version as correct, the bystander's report contains only argument of counsel and no other matter that could affect the outcome of this appeal.

In summary, the defendants have waived their alleged right to avoid the settlement agreement for breach of the condition pertaining to the Chapman and Cutler letter. Alternatively, even if not waived, it does not appear that this condition was breached. Defendants have also waived the alleged right to avoid the settlement on the ground of interposition of an appeal or other attack upon the settlement order. Alternatively, even if not waived, there was no breach of this condition.

The orders appealed from are accordingly affirmed.

O'CONNOR, J., concurs.

Mr. JUSTICE SIMON, specially concurring:

I agree with the views expressed in the court's opinion with regard to the Chapman and Cutler letter. I also agree that by approving and

consenting to the entry of the order on December 11, 1975, the defendants waived their right to express later dissatisfaction with the manner in which the case was disposed of. However, had the defendants not waived their rights to do so by their approval of the entry of the December 11, 1975, order, the defendants would, in my opinion, have been free to reject the settlement on the ground that after four life members withdrew from the class, it was not possible to dispose of the claim with prejudice to those four. My view is based on the portion of the settlement arrangements which provided that the proposed bylaws, which were an essential part of the settlement, would not become effective if this case was not "disposed of, with prejudice to the claims of the class upon whose behalf the complaint states it was brought, in a manner satisfactory to legal counsel to the hospital."

For this reason I do not concur in that portion of the court's opinion under the heading "Disposition Of The Class Suit In A Manner Satisfactory To Counsel For Defendants" which, as I read it, concludes that the settlement would have bound the defendants even had they not approved of the December 11, 1975, order. I believe, in fact, that the court's opinion agrees with the views I state when it acknowledges that "upon the withdrawal of the objectors, counsel for the Hospital could have asserted his dissatisfaction under the express language of the condition and could have refused to approve the order and the settlement, by its terms, could never have proceeded." This portion of the court's opinion appears to me inconsistent with its later conclusion that the four objecting life members were irrelevant to the option given defendants to terminate the settlement agreement in the event their counsel determined the dismissal of this action was not with prejudice to all of the life members.