Tel-Radio Transport Corp., a Corporation, Plaintiff-Appellee, v. Cantrell & Cochrane Corporation, a Corporation, and Great American Industries, Inc., a Corporation, Defendants-Appellants.

Gen. No. 48,940.

First District, First Division.

September 9, 1963.

Wayland B. Cedarquist, Thomas J. Boodell, and Nelson, Boodell, Foster, Sugrue and Crowley, all of Chicago (James L. Donnelly, Jr., of counsel), for appellants.

B. John Mix, Jr., Soloman Gutstein and David Linn, all of Chicago, for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

Plaintiff brought this action to recover damages on a truck-leasing agreement alleged to have been

breached by defendant. The jury returned a verdict for plaintiff, and defendant * appeals from a $49,000 verdict and judgment entered in favor of plaintiff.

The plaintiff corporation, Tel-Radio Transport Corporation was in the trucking and truck leasing business with its garage facilities located at Hinsdale, Illinois. The defendant manufactured and distributed soft drinks in a nation-wide operation with canning plants on the West Coast, in New Jersey and one in Chicago.

In 1954, Harry Newberger, plaintiff's president, solicited defendant's truck-leasing business which resulted in a written lease agreement between the parties executed in July of that year. Plaintiff, by this agreement, was required to provide ten specially designed and constructed trucks for the delivery of canned soft drinks. The bodies of these trucks had three doors on each side of the body, two doors in back and a floor which sloped to a twenty degree angle toward the center of the truck. The lease was for a period of three years from the date of the delivery of the trucks. The lease further provided, that the defendant would pay a certain sum for the use of the trucks and that the plaintiff would bear all expenses for the operation of the vehicles.

Attached to the written contract was a schedule, setting forth among other things, the year of the trucks, the model number, the motor number and the serial number. Each of the ten trucks covered under the schedule were specifically so listed. The written

---

* The original complaint was filed against Cantrell & Cochrane Corporation. At the trial it was stipulated that Cantrell & Cochrane Corporation had merged with Great American Industries, Inc. After verdict and judgment in this case plaintiff's motion for additional judgment against Great American was granted pursuant to the stipulation, but there was only one judgment for $49,000. For convenience we will refer only to "Defendant" and not to Defendants.

86

contract also set up terms under which additional trucks could be added under the terms of the contract.

Ten trucks were delivered to defendant in June or July of 1954. The defendant for its own convenience operated the trucks from the plaintiff's garage in Hinsdale. At the height of the 1954 summer season and after the delivery of the ten trucks contemplated in the written contract, defendant's employee, Charles Widmer, who was in charge of the local trucking operation, informed plaintiff's president that the defendant needed additional trucks. At defendant's oral request ten additional trucks of the same special design were ordered built for defendant's use. A short time later and by agreement, the number of trucks delivered to defendant was reduced to nine.

The facts leading up to defendant's purported termination of the contract are as follows:

The lease agreement provided, in paragraph five, that plaintiff would pay all costs of gasoline, oil, maintenance, etc. It also expressly states that plaintiff would "provide all necessary Illinois State License Plates and City of Chicago Vehicle Tags." It is uncontroverted that the trucks did not have Chicago "tags." The evidence is conflicting as to the reasons for this. It appears from the evidence that the defendant's truck drivers were continually getting traffic tickets because the trucks did not have Chicago Vehicle Tags. On June 3, 1955, defendant sent plaintiff a registered letter addressed to Harry Newberger demanding that tags be furnished for the trucks. In this letter, the defendant referred to a meeting held on March 17, 1955, at which meeting a discussion of the tags was had between Mr. Newberger (President of Tel-Radio), Mr. Kahler (Assistant Sales Manager for defendant), and the writer of the letter, Mr. Naber (Assistant Secretary for defendant). The letter went on to say that Mr. Newberger had agreed to imme-

diately provide proper tags so as not to be in violation of the law, and reminded him that drivers were again being stopped and that the situation should be rectified in accordance with the contract.

On June 6, 1955, the defendant, by registered mail, gave notice and demand that plaintiff supply "tags" on the ten trucks pursuant to the agreement. Thereafter, by registered mail, notice was given to plaintiff on June 18th, 1955, claiming a breach of the lease agreement, and in accordance with the terms of the agreement giving thirty days notice of termination.

The plaintiff claimed that they were not required to purchase "Chicago Tags" because they were the owners of the trucks and they were garaged in Hinsdale, Illinois, and not in Chicago. Moreover, they obtained a certificate of registration from the Secretary of State as required by the Municipal Code of Chicago "Licenses Required. 29.2."

Mr. Newberger testified that after they received the letter of June 6th, Mr. Widmer, defendant's Chicago Sales Manager, asked him to come to their office, and at a meeting on June 9th, between them and Mr. Kahler and Mr. Martin, Vice President and General Manager of Tel-Radio he was told by Mr. Widmer that his company was interested in buying the ten trucks under the written lease for resale to their drivers. Widmer asked him for a price and he quoted $3,000 for each. He said he asked Widmer about the June 6th letter and was assured by both Widmer and Kahler that the purchase of the trucks would go through and they "told us not to purchase the City stickers, because they could not be transferred to the other drivers." After that he said he called Kahler a few times, and was told they were waiting for an answer from their superiors. Under the contract, the defendant had the option to cancel the agreement on any anniversary of the date on which the last vehicle

88

was delivered to it under the agreement by giving the plaintiff thirty days' notice and then by purchasing the vehicles at a depreciated rate as set forth in the schedule. Following the meeting of June 9th, Newberger mailed a letter on that date to defendant offering the ten trucks for sale at $3,000 per truck. Instead of a reply he received the letter of June 18th wherein the defendant declared the lease-contract terminated.

The original complaint filed on January 4, 1956, alleged that plaintiff and defendant entered into a truck-leasing contract and that plaintiff, in reliance upon the contract, "purchased and made available for the defendant's exclusive use fourteen pieces of motor vehicle equipment which were used by the defendant." It was further alleged that defendant, without cause, terminated and breached the agreement to plaintiff's damage in the amount of $136,000. Defendant answered, claiming it was the plaintiff who breached the agreement and counterclaimed for $35,000 in damages. On April 9, 1962, the defendant was given leave to substitute attorneys. On April 12, 1962, an order was entered assigning the case for trial. On that date, defendants moved for a continuance of sixty days and was granted a continuance to April 30, 1962, on which date the jury trial commenced. Before trial, the plaintiff filed an amended complaint, alleging the merger of defendants and modified its claim for damages from $136,000 to $106,702.

On the trial of the cause, the plaintiff offered evidence showing it sustained damages in the amount of $38,912 for the alleged breach with respect to the first ten trucks. The plaintiff then attempted to prove damages to the extent of $36,000 for the additional nine trucks under the express written lease agreement. Objection was made to this proof by defendant and the court reserved its ruling. After hearing further evidence on this latter claim, the trial judge

89

sustained defendants' motion, but over defendants' objection ruled that plaintiff was entitled to recovery on a quantum meruit basis stating "the trucks had special bodies which were of no use to the plaintiff. There was sufficient authority in the sales people to order these nine trucks and they got the benefit of them, for which they paid, which was ratification. There was a loss, determinable by quantum meruit. . ." Pursuant to leave of court, the plaintiff then filed an amended complaint alleging the leasing of additional trucks on an oral agreement which was breached by defendant, causing plaintiff damages in the amount of $10,371.40, which reduced the aggregate claim for damages to $49,000, and defendant appeals from judgment in the amount of $49,000 entered on the verdict.

The defendant first contends that the trial judge abused its discretion in not granting defendants' renewed motion for a continuance on the morning this case went to trial. The affidavit for continuance set forth that material witnesses were not available and could not be located and further, that defendant had demanded documentary evidence from plaintiff, but had not obtained same, and therefore, that defendant needed an additional continuance in order to obtain discovery of such documentary evidence in preparation of trial. In support of this contention, defendant cites Krupinski v. Denison, 9 Ill App2d 155, 132 NE2d 451. The facts in that case are clearly distinguishable from the case at bar. In Krupinski the case was reached for trial within five months after suit was filed and the Appellate Court in reversing a dismissal in that cause stated, "on this review we are not dealing with a case which has been pending over a long period of time and where there have been numerous continuances granted." In the case at bar, the complaint was filed on January 4, 1956, and the cause did

not come to trial until April 30, 1962. The general rule is that a motion for continuance is directed to the sound discretion of the court. People v. Zearing, 305 Ill 503, 137 NE 481. We do not consider that the court abused its discretion by denying defendant's request for a continuance seeking discovery after the case had been pending for six years.

■ The defendant next contends that the plaintiff breached the contract agreement in two respects; first, by furnishing 1953-model trucks instead of 1954-model trucks and second, by failing to provide Chicago Vehicle Tags, and argues that this breach by plaintiff is a bar to an action for breach of contract. We agree with the defendant that one of the basic principles of contract law is that a party who has himself breached an agreement, cannot recover under the agreement. See American Jurisprudence, Contracts, Vol 12 § 338 and Corpus Juris Secundum, Contracts, § 458. Also Himmel v. Sager, 286 Ill App 610, 3 NE2d 347; Glenridge Coal Co. v. Marion County Coal Co., 205 Ill App 264 and Reskie Kirshbaum & Co. v. Walzer, 213 Ill App 305. Each of these cases deals specifically with a breach of a material element of a contract under which the party claimed relief.

■ Schedule "A" of the lease agreement describes the trucks as new 1954, G. M. C. and specifically lists the serial number, motor number and model number of each truck. The evidence shows that the ten trucks accepted and used by defendant were 1953-model G. M. C. trucks, but the serial numbers, motor numbers and model numbers of each truck corresponded exactly with those set out in schedule "A". Paragraph seventeen of the lease provides that in the event plaintiff breaches any of the covenants under the agreement, the defendant may give ten days written notice, specifying the covenant or covenants breached. No such notice was giv-

en. We have concluded, as did the trial judge, that the reference to "new-1954" was merely a misdescription and that the trucks delivered were the same trucks contemplated in the agreement and therefore did not constitute a breach of contract.

■ The plaintiff answers defendant's claim of breach in relation to his failure to purchase Chicago Vehicle Tags by the assertion of a waiver of such condition by the defendant. William J. Martin who was Vice President and General Manager for plaintiff testified, that he was at the June 9th meeting when a discussion took place about the possible sale of the trucks to defendant's drivers. He said that they discussed the letter of June 6th, in which defendant had insisted upon the purchase of the tags and that when he agreed to comply with the request he was told that "it was not completely necessary, but we would hold off until we decided on the sale of the trucks." Oliver Naber, Assistant Secretary of defendant corporation testified, that he was at the June 9th conference and remembered talking about purchasing ten trucks, but the firm never gave any authority to anyone to waive the lease provisions requiring "Chicago Tags."

It is argued that none of the defendant's employees in Chicago had authority to waive the requirement that "Chicago Tags" be placed on the ten trucks, and that Widmer and Kahler had no such authority. This argument is hard to reconcile in view of the evidence, that after the contract was in force almost a year, it was Widmer who defendant asserts had authority to write the letter of June 6th, demanding tags and June 18th, declaring the contract terminated. A corporation can act only through its employees. We think it was a question of fact for the jury whether the requirement of the "tags" was waived and whether Kahler and Widmer had authority to make such a waiver. Kempton Farmers Elevator Co. v. Lowitz,

231 Ill App 273. Furthermore, after the plaintiffs received the June 18th letter they immediately purchased the tags and placed them on the trucks.

■ We turn to a consideration of the contention of defendant that even if the trial court did not err, as to the original ten trucks, there was no proof of any agreement as to the nine trucks, and the court's ruling based on a quantum meruit basis was contrary to law.

The record shows that the defendant, due to the seasonal nature of the soft drink business, had been in the practice of contracting for only a minimum number of trucks and renting additional trucks as its business demanded. After the written contract for the original ten trucks had been in operation for several months, the defendant orally requested additional trucks. The plaintiff complied and nine additional trucks were made available to the defendant. These trucks were at no time added to Schedule "A" of the written contract nor was a supplementary schedule made as specifically required in the written contract. The plaintiff sent invoices on the additional trucks on a weekly basis and the defendant paid these invoices. Later, the defendant's business declined and after using the additional nine trucks for about two months they were returned to the plaintiff.

In plaintiff's complaint, damages were sought for breach of the written agreement in relation to the original ten trucks, for a period of three years. In the First Amended Complaint, plaintiff still sought damages for breach of the written agreement, but amended by increasing the number of trucks to nineteen. Plaintiff's Second Amended Complaint, filed at the close of the trial to conform to proofs, claimed damages for the breach of the written agreement for the ten trucks, but amended the complaint by the addition of an allegation as to the breach of an oral contract

for the additional nine trucks by which breach the plaintiff sustained damages in the amount of $10,371.40.

The damages awarded for the additional nine trucks was on a quantum meruit basis and was not based on the original written contract for the three-year period. The trial judge allowed a recovery on the theory of quantum meruit although the plaintiff's President and another witness testified that the parties had agreed that the nine trucks came under the written contract. Plaintiff chose to furnish nine additional trucks without executing a written schedule as required in the written agreement. Mr. Newberger, plaintiff's President, testified that about two months after defendant first received the nine additional trucks, he was told that defendant could no longer use these trucks and that, "they (sic) had laid off the drivers." After the nine trucks were returned, the defendant assured the plaintiff that its business would pick up by the next spring and requested that the plaintiff go along with them. The plaintiff did not bill the defendant for the additional trucks and invoices were not sent to the defendant thereafter.

The courts cannot remake the agreements between the parties. 12 American Jurisprudence, Contracts, Section 228. The original contract between the parties set out clearly the manner in which additional trucks could be brought within the terms of that contract. The additional trucks were to be added to the schedule affixed to the contract or a new schedule could be made. Although additional trucks of the same type as were covered in the written contract were made available to the defendant, no supplemental schedule was ever executed. When the defendant returned these additional trucks, after a period of only two months, the plaintiff accepted them and immediately ceased billing the defendant for their use. The plaintiff argues that no corporation would invest a large

sum of money for the purchase of specially designed trucks if it did not have a contract for their continued use. We however can only grant to the plaintiff's action the same solemnity which it itself indicated. Mr. Newberger, plaintiff's President, testified that when the discussion took place about a purchase of the original ten trucks by defendant, he didn't think of the additional nine trucks at the time. He added, "I don't remember how I felt at the time about the nine trucks, whether they were still responsible for them." We see no basis in law for plaintiff to recover on a quantum meruit basis because it imprudently entered into an oral agreement for what only can be construed as the temporary leasing of nine additional trucks.

The judgment will be reversed in part and remanded with instructions to modify the judgment of $49,000 by deducting from it sum of $10,371. The judgment will otherwise be affirmed.

Affirmed in part and reversed in part.

ENGLISH, PJ and MURPHY, J, concur.