JOHN KUBINSKI & SONS, INC., Plaintiff and Counterdefendant-Appellee, *v.* DOCKSIDE DEVELOPMENT CORP., Defendant and Counterplaintiff-Appellant.—(RESERVE INSURANCE COMPANY, Counterdefendant, Cross-Plaintiff and Third-Party Plaintiff-Appellant; JOHN KUBINSKI & SONS, INC., *et al.* Counterdefendants, Cross-Defendants and Third-Party Defendants-Appellees.)

(No. 59623;

First District (1st Division)—November 3, 1975.

Brown, Fox and Blumberg, of Chicago (Eugene L. Resnick, of counsel), for appellant Dockside Development Corp.

Schiff, Hardin & Waite, of Chicago (Aaron J. Kramer, of counsel), for appellee Reserve Life Insurance Co.

Mr. JUSTICE EGAN delivered the opinion of the court:

The plaintiff-counter-defendant, John Kubinski & Sons, Inc. (Kubinski), is an excavating contractor which entered into a written agreement on February 1, 1968, with the defendant, Dockside Development Corporation (Dockside), to excavate a slip at Lake Calumet Harbor. The plaintiff filed a complaint for breach of that written agreement; the defendant filed a counterclaim against the plaintiff for breach of the

contract and against the plaintiff and its surety, Reserve Insurance Company (Reserve) for breach of the performance bond. The trial court entered judgment for the plaintiff, dismissed the defendant's counterclaim, and denied the petition of the plaintiff and Reserve for prejudgment interest. The defendant appeals from the judgment in favor of the plaintiff and dismissing the defendant's counterclaim; and the plaintiff and Reserve cross-appeal from the denial of their petition for prejudgment interest.

Under the agreement, Kubinski was to excavate a slip at Lake Calumet Harbor to accommodate ocean and lake vessels and was to be paid 48 cents per cubic yard of excavated material with a guarantee of at least 300,000 cubic yards. The excavation was required to meet a periodic completion schedule by which Kubinski was to excavate a minimum of 12½% of the total material by specified dates beginning on March 15, 1968, and ending on January 1, 1969. The contract also provided that time was of the essence and for a $150 a day penalty clause for delay caused by Kubinski.

During the excavation Dockside was to construct a dockwall, a structure for mooring vessels, adjacent to the slip. The dockwall was to be completed by September 1, 1968; and until it was completed, Kubinski was not to excavate within a minimum 10-foot berm. A berm was described as a flat area of unexcavated earth which is left to support future construction equipment.

Only Dockside was authorized to suspend the excavation work when its engineers determined that further excavation would jeopardize the construction of the dockwall. These suspension periods had a maximum duration of 30 days; and after a suspension period, Kubinski was "to promptly resume work." After resuming work, Kubinski would be permitted to work for a period of at least 30 calendar days before another such suspension order could be issued.

Donald Kubinski testified that late in August, 1968, he asked Dockside to issue a 30-day suspension order because the excavation was getting close to the minimum 10-foot berm. On September 4, 1968, Dockside's engineers issued a suspension order which stated that since completion of the dockwall had not been met by the contract date of September 1, 1968, the owner would assume all costs in connection with the pumping required to keep the slip reasonably free of water. The contract had provided that the owner would bear the costs of pumping after September 1, 1968, but only during the duration of a suspension order.

The president of Dockside testified that the failure to complete the dockwall by September 1, 1968, was due to a delay in obtaining steel from Europe; and that Dockside did not execute the written contract

for the installation of the dockwall until the early part of September, 1968.

During the suspension of work, which was ordered on September 4, but which took effect 10 days later, the attorney for Kubinski wrote a letter dated October 7, 1968, to the Dockside engineers. In that letter he advised them of their failure to meet the dockwall completion date and the uncertainty of even further delay. He also stated that due to the approach of winter his client's performance would be made more difficult by the existence of a frost condition in the ground. He also requested the owner's position on additional compensation for the increased costs due to the delay.

On October 23, 1968, a conference of the parties was held to determine if an agreement could be reached on additional compensation for Kubinski due to the likelihood of adverse winter conditions. At the time of this meeting the original suspension order had already expired on October 14, 1968. No written agreement was reached at that conference. However, another letter from Kubinski's attorney dated October 28, 1968, was sent to Dockside stating the attorney's understanding of what had occurred at that conference.

The letter stated that the dockwall completion date of September 1, 1968, had not been met; that it was anticipated that excavation could resume on or about November 15; that Kubinski would necessarily incur greater expenses because of the delay; that extra compensation would be necessary; and that considerable difficulty was had in reaching a formula to determine extra compensation. The letter then added the attorney's understanding of what was actually agreed to as follows:

"Nevertheless, we were able to agree that in the event the contractor is forced to complete all or some portion of the work while a frost condition exists, that one of the following two methods of extra compensation would be employed:

(a) In the event that the frost condition requires the use of a ripper, that the owner will bear the cost of the ripper complete with an operator, a tractor to pull the ripper, fuel, and incidental costs.

(b) In the event that the frost condition is so severe that the use of a ripper alone will not obviate the problem, then we have agreed that we will have an additional meeting to negotiate such additional compensation as would then seem fair."

The letter stated that the contents could be approved and confirmed with Dockside's authorized signature; that copies were furnished to Kubinski for the same purpose; and that signed copies should be exchanged. Dockside did sign that letter but made the following alteration:

"Except as modified by this letter the contract between John Kubinski & Sons, Inc. and Dockside Development Corp. dated 2/1/68 as heretofore amended and supplemented shall be and continue in full force and effect."

Dockside requested that a copy of the letter, as altered, be signed by Kubinski and forwarded to Dockside. However, Kubinski never did sign that letter.

On December 3, 1968, Dockside's engineers sent a letter to Kubinski stating that it was anticipated that work on the dockwall would have progressed sufficiently for resumption of excavation on December 14, 1968. On December 9, 1968, Kubinski's attorney answered by letter stating that the contract date of September 1 had not been met; that the approximate resumption date of November 15 had not been met; and that due to still an additional 30 days' delay, work would have to be done during the severe winter months. The letter then listed several factors affecting increased costs and stated that an additional meeting should be held because "the additional delay has made inclement weather a reality." The suggested meeting would be held to determine the "substantial additional expense" resulting from the cold weather.

Dockside answered the letter of December 9 by stating that there was no need for any further meetings and that increased charges and costs could be worked out as soon as the job was finished. Kubinski's attorney answered Dockside by the following language taken from a lengthy letter dated December 18, 1968:

"Your failure to make the work available prior to the middle of December constitutes a clear and substantial breach of the contract on your part. Such breach justifies our client in declaring the contract terminated."

A meeting was held on December 26, 1968, to discuss a possible new price to complete the job, but no agreement was reached. Dockside thereafter hired another contractor to complete the remaining excavation and was required to pay $65,220 more than the initial contract price with Kubinski. It was that sum that Dockside sought to recover in its counterclaim.

The defendant admits that it caused the delay but contends that the contract provisions for the dockwall completion date were waived by another agreement and the subsequent conduct of the parties. Consequently, the defendant contends, the contract remained in full force and effect until abandoned by the plaintiff on December 18.

■■ Delays in performance of a contract may be waived by conduct indicating an intention to regard the contract as still in force and effect. (*Board of Education v. United States Fidelity & Guaranty Co.*, 115

Ill.App.2d 416, 427, 253 N.E.2d 663.) In order that there may be a waiver of performance of the provisions of a contract in accordance with their terms, the facts and circumstances must show an intentional relinquishment of a known right, and the acts relied on must be inconsistent with an intention to insist on the rights of the party under the contract. 12 I.L.P. *Contracts* § 409 (1955).

Dockside points to several actions by Kubinski after the September 1 dockwall completion date to support a finding of waiver as a matter of law: Kubinski asked for the September suspension order; he delivered Reserve Insurance Company's bond after September in order to release $43,000 retained by Dockside and delivered insurance certificates to Dockside as late as November 15; he continued to pump water out of the excavation site after September 1 and accepted compensation for the pumping; and Kubinski continued to work on additional work orders provided for in the contract for work outside the excavation site.

In our view, these actions of Kubinski are not inconsistent with an intention to insist on his contractual rights. He asked for a suspension for safety reasons; he had excavated to the point that the berm was 16 feet wide; his equipment was at least 10 feet wide; and if his equipment fell off the berm it would plunge 26 feet into a ditch. He delivered the bond in order to obtain a release of $43,000 which had been retained by Dockside. *Tobey v. Price*, 75 Ill. 645, refutes Dockside's argument that continuation of the work is evidence of waiver of the completion date requirement:

> "Appellant argues, if he was tardy, and failed to furnish the iron and cut stone work seasonably, the plaintiffs could have abandoned the job, and brought their action for such damages as they incurred in not being able to complete it. But he argues, if instead of abandoning the job they elected to proceed and complete it, they will be presumed to have waived the lapse of time, and to have done the work under contract, and they can, therefore, claim only the contract price. In other words, appellant claims appellees are entitled to no damages for his delay. We know of no authority for such a position. Appellees could have abandoned the work and brought their action for damages, but their right to proceed with the work to completion, and then claim damages, cannot be seriously questioned." 75 Ill. at 647.

*Tobey* was cited and followed in *Underground Construction Co. v. Sanitary District*, 367 Ill. 360, 11 N.E.2d 361; *Consumers Construction Co. v. County of Cook*, 1 Ill.App.3d 1087, 275 N.E.2d 696; and *W. H. Stubbings Co. v. World's Columbian Exposition Co.*, 110 Ill.App. 210.

■■ Whether a breach of a time provision of a contract justifies a

repudiation of the agreement is a determination not to be made lightly by an injured party, since, should a court later hold his determination unwarranted, the repudiator will himself be guilty of a material breach. To hold that Kubinski should have declared an immediate forfeiture after September 1 would defeat the public policy that encourages the extrajudicial resolutions of disagreements. Moreover, we cannot say, and we are not required to say, that the failure to complete the dockwall by September 1 was a material breach. But when the delay in the dock-wall construction failed to meet the mid-November date as discussed in the October 23 meeting and when the delay was definitely extended to December 14 by the letter of December 3, such a delay, considering the adverse weather conditions contemplated in the future, would then be considered material. This was precisely the position taken by the plaintiff in the letter sent by his attorney on December 18 in which he told Dockside:

> "Your failure to make the work available prior to the middle of December constitutes a clear and substantial breach of the contract on your part."

■■ The contract required that Kubinski was "to promptly resume work" after the period of suspension. Kubinski did not promptly resume work after the expiration of the suspension on October 4; therefore, the defendant argues, the suspension order was treated by Kubinski as being in full force and effect and that he tacitly accepted the extension of the suspension. It was not until December 3 that Dockside engineers notified Kubinski that they anticipated that work on the dockwall would have progressed sufficiently for excavation to resume on December 14, 1968. Therefore, the contractual requirement "to promptly resume work" is of no significance when work was unable to proceed. When performance has been prevented by the party to be benefited, no advantage can be taken of the failure to perform. *Neil v. Kennedy,* 319 Ill. 75, 149 N.E. 775; *Daven v. Downey,* 378 Ill. 543, 39 N.E.2d 45.

Dockside also argues that the parties modified the original contract by an agreement made on October 23, as evidenced by the letter from Kubinski's attorney on October 28, 1968. Kubinski answers that the agreement as embodied in the letter is an "agreement to agree" and, consequently, is not enforceably certain; that even if the letter could be construed as a binding agreement, the defendant breached that agreement by not having the dockwall completed by November 15; and that there was no agreement because Kubinski did not sign the letter.

■■ At the same time that the defendant insists that the subsequent agreement was sufficiently certain, it defends its failure to complete the dockwall by November 15 by pointing out that the letter provided only

that it was *"anticipated* that the contractor [would] not be able to resume excavation until *about* November 15." (Emphasis supplied by the defendant.) Whether the agreement was sufficiently ascertainable and whether the defendant breached by not completing the dockwall by November 15 we need not decide, because we agree with the plaintiff that both parties did not assent to the same terms. The letter written by Kubinski's attorney was intended to state the attorney's understanding of what had occurred at the conference of October 23. The letter provided a space for Dockside's signature if the contents could be approved and confirmed. The letter also informed Dockside that a similar letter had been sent to Kubinski and that the parties should exchange signed copies. Dockside signed the letter but added the clause considering the original contract in full force and effect. The letter was never signed by Kubinski and therefore no agreement was ever reached. Mutual assent by the contracting parties is fundamental to the formation of the contract and the conditions to which they agree must be identical. *Bank of Marion v. Robert "Chick" Fritz, Inc.,* 9 Ill.App.3d 102, 291 N.E.2d 836, *aff'd,* 57 Ill.2d 120, 311 N.E.2d 138.

The defendant seeks to avoid the requirement for Kubinski's signature by maintaining that a binding agreement took place at the meeting of October 23. If there was such an agreement, it was oral. Absent a statutory bar, written agreements, of course, may be modified by parol. But we do not believe the evidence supports the conclusion that the defendant thought it was entering into an enforceable oral agreement on October 23. The letter states, for example, that Dockside acknowledged at the meeting that Kubinski was entitled to an extension of time to complete the contract as regards the penalty provisions. It also said:

> "While the contractor has not specifically agreed that the day for day extension as regards the penalty clause is the only extension to which he would be entitled, * * * he does agree that a day for day extension would seem all that is necessary at this point and will advise you in advance in the event that some further extension should appear necessary.
>
> 5. It was agreed that additional sounding would be taken of the approach to the project."

The most damaging evidence to the defendant's argument, however, is that which the defendant itself added to the letter:

> *"Except as modified by this letter* the contract between John Kubinski & Sons, Inc. and Dockside Development Corp. dated 2/1/68 as heretofore amended and supplemented shall be and continue in full force and effect." (Emphasis added.)

This language, to us, clearly shows that Dockside regarded the letter itself as the embodiment, not a memorandum, of the agreement.

For these reasons we deem that the trial court's finding that the plaintiff had not waived any contract provisions was supported by the evidence (*Tel-Radio Transport. Corp. v. Cantrell & Cochrane Corp.*, 43 Ill.App.2d 84, 92, 192 N.E.2d 584); and that the original agreement had not been modified by the letter of October 28. Consequently, it properly entered judgment for the plaintiffs and dismissed the defendant's counterclaim.

■■ After judgment was entered, Kubinski and Reserve filed a petition for prejudgment interest which the court denied, stating:

"Taking all of these facts into consideration, I feel it is within the Court's discretion; the interest answer [*sic*] is not a mandatory statute, it is a discretionary statute.

It gives the Court discretion to determine whether or not interest should be applied or added to a money judgment that results in a finding that the defendant was guilty of a breach of contract."

The statute (Ill. Rev. Stat. 1971, ch. 74, § 2) provides, in part, as follows:

"Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing; * * * and on money withheld by an unreasonable and vexatious delay of payment."

As can be seen, the right to recover interest on a written instrument is separate from and independent of the right to recover interest on money withheld by an unreasonable and vexatious delay of payment. In other words, to recover interest for money due on a written instrument, the creditor need not prove that payment was delayed unreasonably and vexatiously. The fact that the parties could reasonably differ as to the defendant's liability is not a consideration so far as the statute is concerned. (*Martin v. Orvis Brothers & Co.*, 25 Ill.App.3d 238, 251, 323 N.E.2d 73.) The creditor must, however, prove that the money due was a liquidated amount or subject to easy computation. *Kansas Quality Construction, Inc. v. Chiasson*, 112 Ill.App.2d 277, 287-288, 250 N.E.2d 785; *United States ex rel. Thorlief Larsen & Son, Inc. v. B. R. Abbot Construction Co.* (7th Cir. 1972), 466 F.2d 712, 714; *Penn Central Co. v. Chicago, Milwaukee, St. Paul & Pacific R.R. Co.* (7th Cir. 1970), 433 F.2d 943, 944.

■■ A building contract is an "instrument of writing" within the meaning of the interest statute. (*Smith v. Gray*, 316 Ill. 488, 147 N.E.

459; *Keeler v. Herr*, 157 Ill. 57, 41 N.E. 750.) The contract stated that 10 per cent of each periodic payment earned should be retained by the defendant until the completion of the contract. It was always agreed that the amount retained by the defendant was $10,848. Thus, the amount due was liquidated. We judge, therefore, that the granting of interest was not subject to the court's discretion and was required under the statute.

■■ The contract provided that the 10 per cent was to be retained until after the completion of the work to the satisfaction of the defendant's engineers. The issuance of a final certificate of the engineers was made a condition precedent to the release of any part of the amounts retained. The defendant argues that until the issuance of the certificate or a legal excuse for its non-production had been judicially established, no part of the sums retained became due under the contract. But the contract was "completed" at the time of the defendant's material breach, at least as far as the plaintiff was concerned. The letter of December 18 from the plaintiff's attorney to the defendant makes the plaintiff's position at that time clear. Since the defendant prevented completion of the contract, it is not now in a position to argue that the money was not due because the contract was not completed. If the defendant's argument is correct that the issuance of the engineer's certificate was a condition precedent to release of the money retained, it could withhold the certificate indefinitely and thus the payment, regardless of any breach. Such a conclusion is manifestly unacceptable.

We must also reject the defendant's argument that a demand for payment was necessary. The defendant has not cited any case, and our research discloses none, involving a written instrument and a liquidated sum holding that a demand was a condition precedent to the recovery of interest.

In *Kansas Quality Construction, Inc. v. Chiasson*, 112 Ill.App.2d 277, 287-288, 250 N.E.2d 785, the plaintiff did not ask for interest in the original complaint but filed a petition after verdict and before judgment. In this case, Kubinski and Reserve filed their petition after judgment. Thus, the defendant argues, *Chiasson* has no application. In our view, the fact that the petition in this case was filed after judgment is a distinction from *Chiasson* without a difference.

We judge, therefore, that the contract was breached on December 18; that the contract was a written instrument within the meaning of the interest statute; that the amount was liquidated; and that, therefore, the plaintiff was entitled to interest from December 18, 1968. The judgment of the circuit court on behalf of the plaintiff in the sum of $10,848 and in favor of Kubinski and Reserve on the defendant's counterclaim is

affirmed; the judgment of the circuit court denying the petition for interest is reversed and remanded with directions to award interest at the rate of five per cent per annum from December 18, 1968, until July 16, 1973, the date the trial court entered judgment on the original complaint.

Judgment affirmed in part and reversed and remanded with directions in part.

BURKE, P. J., and GOLDBERG, J., concur.