**Donald V. McCANN, Plaintiff,**

v.

**FRANK B. HALL & CO. INC. and Albert J. Tahmoush, Defendants,**

**FRANK B. HALL & CO. INC., Counter-plaintiff,**

v.

**Donald V. McCANN, Counter-defendant.**

**No. 83 C 3070.**

United States District Court, N.D. Illinois, E.D.

April 30, 1985.

Edward M. Burke, Klafter & Burke, Chicago, Ill., for plaintiff.

John L. Huff, Winston & Strawn, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

This matter is before the court upon the Report and Recommendation of the Magistrate of March 19, 1985. (Appendix A). This court adopts the Report and Recommendation of the Magistrate and hereby

grants plaintiff's motion for partial summary adjudication on Count I of the Amended Complaint in accordance with Fed.R.Civ.P. 56(d), and hereby finds the defendant liable to plaintiff for $177,000 ($150,000 salary from December 31, 1983 to December 31, 1984 and $27,000 for rental of plaintiff's apartment through 1984). Plaintiff's motion for partial summary adjudication on Counts II and III are denied in accordance with the Magistrate's Report and Recommendation. The objections of defendant Frank B. Hall & Co. ("Hall") are overruled for the following reasons.

Hall's objection centers around paragraph 2 of an employment contract between plaintiff Donald McCann and defendant Hall. Paragraph 2 provides:

2. Unless you or the Company give written notice of termination, this agreement will be automatically extended on December 31 of each year to the December 31 two years from the date of the extension. For example, if no notice of termination is given in 1980, the agreement will be automatically extended on December 31, 1980 to a term to end December 31, 1982. A written notice of termination shall be effective on the date to which the agreement had last been extended. For example, a notice of termination delivered in 1981 shall be effective on December 31, 1982.

The Magistrate found, and this court agrees, that pursuant to paragraph 2, the employment contract automatically extends itself on December 31 of each year for two years, unless written notice of termination is given by either party. If written notice of termination is given, such termination *becomes effective on the date to which the agreement had last been extended.*

The issue before the Magistrate was whether the plaintiff's *oral* notice of November 9, 1982 effectively invoked the termination provision of paragraph 2. Since the contract automatically extended itself at the end of each year for an additional two years, at the time the oral notice of termination was given on November 9, 1982, the contract had been automatically extended to December 31, 1983. If that oral notice was effective, then the contract terminated on that date, December 31, 1983. However, if the oral notice was not effective and written notice was required as McCann maintains, then the termination provision was not effectively involved until April 29, 1983 when written notice of McCann's termination was given. Under these circumstances, the contract would have automatically renewed itself on December 31, 1982 for two years, until December 31, 1984. Thus, if written notice was required, McCann is entitled to an additional year's salary and benefits in accordance with the contract. After examining the pertinent cases, the court finds that the cases relied upon by Hall cannot be applied to the instant case.

Hall essentially relies on cases which support the proposition that an employment contract, which by its terms may be terminated by giving a specified period of notice prior to termination, may also be terminated without notice, on the condition that compensation is paid for the specified period of notice. 35 A.L.R. 889, 896 (1925) (citing cases). Thus, for example, where an employment contract provided that employment could be terminated upon ten days notice in writing, an employee, who received oral actual notice of termination and later written notice of termination, was entitled to ten days compensation from the date of oral actual notice. *E.g., Malby v. J.F. Images, Inc.*, 632 P.2d 646 (Colo.Ct. App.1981). The reason for this rule is simple; the usual purpose of a notice provision in an employment contract is to give the employee the bargained for time to seek other employment. 35 A.L.R. 889, 896 *supra*. If the employer chooses to discharge the employee and pay the agreed salary for the time of the notice, it is difficult to see how the employee has been injured since he has received the benefit of his bargain. *Id.*

However, this general rule as exemplified by *Malby*, is inapplicable to the facts of the instant case. The notice provision in the instant case does not set a specified notice period, such as ten days,

for termination of the contract. Rather, the giving of notice, in and of itself, operates to create the length of the employment contract. An extension of the contract, amounting to a two year employment contract, is created each December 31 provided no written notice of termination has been given during the year. Thus each December 31, McCann became entitled to two years of employment. Because the notice provision created the duration of the employment contract itself, proper invokation of that notice provision, *i.e.*, written notice, was required. *E.g., Bour v. Kimball*, 46 Ill.App. 327 (1892). This principle, as exemplified by *McCormick Harvesting Machine Co. v. Cordsiemon*, 101 Ill.App. 140 (1902) is not an aberration as Hall contends. Rather, it is a general rule of contract construction which specifies that the requirements of a contract as to notice, as to the time of giving, the form, and the manner of service thereof, must be observed in canceling the contract. There must be exact compliance with the terms of the provision for notice. *Bour v. Kimball, supra; see Criterion Advertising Co. v. Clemensen's Florists & Decorators, Inc.*, 314 Ill.App. 383, 41 N.E.2d 232 (1942); *Butterick Publishing Co. v. Frederick Loeser & Co.*, 232 N.Y. 86, 133 N.E. 361 (C.A.N.Y. 1921); *see generally* 12 Am.Jur.2d Contracts § 498 (1964 & Supp.1984) (citing cases). To find otherwise would not give McCann the benefit of his bargain and would disregard the plain and unambiguous meaning of the words of paragraph 2. Paragraph 2 did not merely entitle McCann to two years notice of termination as Hall contends. Paragraph 2 gave McCann more: the right to written notice as a mechanism for setting the duration of any extension of his employment contract.

In view of the fact that the Magistrate found, as a matter of law, that McCann's contract was extended through December 31, 1984, Hall's further claims of error regarding the Report are without merit. Hall claims that the Magistrate made factual determinations unfavorable to it and that he did not prepare proposed findings of fact nor specify non-disputed facts as required by the Federal Rules. These claims of error ignore the fact that the Magistrate properly interpreted the unambiguous language of Paragraph 2 as a matter of law. It is well settled that in cases of contract construction, resolution of disputes involving the interpretation of unambiguous agreements is for the court to determine as a matter of law. *Sunstream Jet Express Inc. v. International Air Service Co.*, 734 F.2d 1258 (7th Cir.1984). Thus, resolution of disputed factual issues was unnecessary in properly determining the meaning and effect of paragraph 2. Moreover, Hall does not dispute that McCann was fired on November 9, 1982. Hall attempts to create issues of fact by claiming that McCann waived his right to written notice since he understood he was fired and since he "virtually disappeared" from Chicago for about four months after his firing. (Hall's Objections to March 19, 1985 Report & Recommendation). Even accepting these facts as true, they cannot, as a matter of law, amount to any waiver by McCann of his rights under paragraph 2. Hall does not dispute that the locks on McCann's office were changed immediately after his firing "for security reasons." (*Id.* at 5.) Nor does Hall claim that McCann should have forced himself into Hall's office and attempted to work, despite his firing. Hall thus recognizes that McCann's firing was immediate and that it owes some measure of damages to McCann. It merely seeks, by the above-mentioned facts, to shorten its liability under paragraph 2 by one year. This uncontested factual situation affords no basis for such relief. Moreover, the mere fact that McCann recognized and understood the effects of his meeting with McCaffrey on November 9, 1982, provides no basis for waiver. If McCann's understanding and recognition that he was fired could constitute waiver in such circumstances, paragraph 2 would be deprived of its meaning by the unilateral act of Hall. McCann's conduct, as described by Hall, amounts to no more than a recognition by McCann that Hall was firing him. The mere fact that he understood

what was happening does not amount to waiver in such circumstances.

### Conclusion

In accordance with the Report and Recommendation of the Magistrate, this court enters partial summary adjudication for plaintiff on Count I of the Amended Complaint and finds the defendant is obligated to pay plaintiff employment benefits specified in the employment contract through December 31, 1984.

### APPENDIX A

*REPORT AND RECOMMENDATION of Magistrate James T. Balog*

#### March 19, 1983

Before the court is the Plaintiff's motion for partial summary judgment. For the reasons stated below, it is recommended that the motion be granted in part and denied in part.

The facts, as alleged, are drawn primarily from the Plaintiff's complaint. Plaintiff, Donald V. McCann ("McCann") began his employment with Frank B. Hall & Co., Inc. ("Hall") in 1973. Hall is an insurance brokerage firm. Until January 1980, McCann held a sales position with Hall in Los Angeles, California. McCann was an extremely successful salesman, generating annual commissions of $1,250,000.00 dollars.

McCann desired to become involved in the upper management of Hall, so in May of 1980 he accepted a position as Regional Manager of the Midwest and Southwest branches of Hall. McCann was to be based in Chicago, Illinois. The employment agreement entered into by the parties provided that McCann was to be paid a minimum of $150,000.00 per year and that Hall would pay one-half the rental price of an apartment used by McCann in Chicago. The contract also contained the following provisions:

"2. Unless you or the Company give written notice of termination, this agreement will be automatically extended on December 31 of each year to the December 31 two years from the date of the extension. For example, if no notice of termination is given in 1980, the agreement will be automatically extended on December 31, 1980 to a term to end December 31, 1982. A written notice of termination shall be effective on the date to which the agreement had last been extended. For example, a notice of termination delivered in 1981 shall be effective on December 31, 1982.

4. Except with the written consent of the Company, you agree that while this agreement is in force and for two years after the agreement terminates, you will not compete directly or indirectly with the Company or any of its subsidiaries by soliciting or receiving income in any form for providing insurance services to any person or entity which was a client of the Company or any of its subsidiaries at any time during the six months prior to the end of the term of this agreement."

On November 9, 1982, McCann was informed orally by John McCaffrey, Hall's Executive Vice-President, that his employment with Hall was terminated. This meeting took place at Hall's corporate headquarters in Briarcliff, New York. The next day McCann returned to his Chicago office and found that all the locks had been changed which prevented him from performing the employment agreement. (Plaintiff's Memorandum in Support of Partial Summary Judgment at 3).

On March 29, 1983, McCann filed suit against Hall in the Circuit Court of Cook County, Illinois. The case was removed to the United States District Court for the Northern District of Illinois upon the motion of the Defendants. On April 29, 1983, Hall sent McCann written notice of termination, alleging December 31, 1983 as the effective termination date.

It is McCann's contention that the oral notice given by Hall was ineffective to terminate the agreement. Since written notice was not given until April of 1983, McCann maintains he is entitled to compensation through December 31, 1985. Hall claims the oral notice was effective and

terminated McCann's contract as of December 31, 1983.

McCann also claims that the restrictive covenant in his employment agreement is void as against public policy. McCann further asks the court to order Hall to pay one-half of his rental of his Chicago apartment until December 31, 1985; that he is entitled to 2,000 shares of Hall stock under an employee stock grant; that he be paid an additional $30,000 in insurance benefits in that he has suffered mental anguish entitling him to $100,000.00 and that he is entitled to $50,000.00 in attorneys' fees.

In considering a motion for summary judgment, the Plaintiff has the burden of demonstrating that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. *Adiekes v. S.H. Kress & Co.*, 398 U.S. 144, 157 [90 S.Ct. 1598, 1608, 26 L.Ed.2d 142] (1970); *Ross v. Bridgeport & Brass Co.*, 487 F.2d 804, 808 (7th 1973). Any doubt as to the existence of a genuine issue of material fact must be resolved against the movant. *Trotter v. Anderson*, 417 F.2d 1191, 1192 (7th Cir.1969). The evidence in the motion is considered in favor of the non-moving party and all favorable inferences are likewise to be drawn in their favor. *Schafer v. First National Bank of Lincolnwood*, 509 F.2d 1287, 1297–8 (7th Cir.1975), *cert. denied*, 425 U.S. 943 [96 S.Ct. 1682, 48 L.Ed.2d 186] (1976).

The first issue in this case which has not been considered in great detail by the parties is what law controls the instant agreement since the agreement itself is silent as to the controlling law. It is a well established principle that the law of the place of performance governs the construction and obligations of the contract when the place of making and place of performance differ, if the agreement is to be wholly performed in one jurisdiction. *Charles O. Finley & Co., Inc. v. Kuhn*, 569 F.2d 527, 542 (7th Cir.), *cert. denied*, 493 [439] U.S. 876 [99 S.Ct. 214, 58 L.Ed.2d 190] (1978). Since this contract was made in New York, but to be performed in Illinois, Illinois law will be controlling.[1]

## I. ORAL NOTICE OF TERMINATION.

The contract in the case at bar could not be any more unequivocal in the requirement that written notice was required for its termination. Although Illinois has never explicitly decided whether oral notice effectively terminates a contract where written notice is required, it is clear that the general principle is that the terms of the contract must be strictly followed. *McCormick Harvesting Machine Co. v. Cordsiemon*, 101 Ill.App. 140, 141 (3d Dist. 1902). In *McCormick*, the contract required five days' notice in writing before its effective termination. The employee was discharged with no notice. The court held that "where a contract itself provides the method for recission, it should be followed ... [the Defendant] should have given the written notice specified in the contract." *Id.*

The same principle has been espoused by the Illinois courts when forfeiture provisions are in contracts. In *Kelly v. Germania Savings & Loan Assoc.*, 28 Ill.2d 591, 192 N.E.2d 813 (1963), a real estate contract required written notice of forfeiture. The court held that the only proper method for forfeiture was by written notice since that was what the contract required. *Id.* at 545. Certainly, termination provisions in employment contracts are of the same magnitude as forfeiture provisions in real estate contracts. It would seem patently unjust to allow Hall to avoid the literal terms of the contract.

The Defendant relies on the case of *Maltby v. J.F. Images, Inc.*, 632 P.2d 646 (Colo.App.1981), in support of its contention that oral notice effectively terminates the contract, despite a provision requiring written notice. Colorado law does not control the case at bar, but a review of the *Maltby* case is nonetheless warranted. In *Maltby*, the Plaintiff's contract required 10 days written notice before it could be terminated. On June 11, the Defendant orally

---

**1.** We note that the decision would be the same if New York law were controlling.

notified the Plaintiff that her employment was terminated. It was not until August 3, that the Defendant notified the Plaintiff in writing. The court held that the oral notice effectively terminated the agreement and that the Plaintiff was entitled to be paid for only ten days from June 11.

The court mistakenly cited the case of *Raynor v. Burroughs Corp.*, 294 F.Supp. 238 (E.D.Va.1968), to support the view that the oral notice was effective. However, a reading of *Raynor* supports the opposite view—that the notice was not effective until it was given in writing. In *Raynor*, the contract required 30 days written notice. The Plaintiff was orally notified on March 15 that his present position would be terminated as of April 27 and was offered another position within the company. On April 15, the Defendant sent the Plaintiff a letter confirming the March 15th verbal notice cancelling the contract and withdrawing the offer of the other position. On May 13, the Defendant sent the Plaintiff another letter stating his employment terminated as of May 13. The court found that the Plaintiff was entitled to damages from May 13 to June 13, thus finding that the notice was not effective until the written notice of May 13. *Id.* at 242.

In the case at bar, McCann was not given written notice until April 29, 1983. The contract provides that the agreement will be automatically extended on December 31 of each year to the December 31 two years from the date of the extension, unless written notice of termination was given. On December 31, 1982, McCann's contract extended until December 31, 1984. The written notice given on April 29, 1983, by the

terms of the contract was not effective until December 31, 1984.[2]

Hall also contends that McCann, by his actions after the oral notice was given, waived the right to written notice. This argument is absurd. McCann merely told other Hall employees that he had been fired. (*See* Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, Ex. D). As the Plaintiff indicates, just repeating that he had been fired does not constitute a waiver of legal rights under the contract. *Kubiniski v. Dockside Development*, 33 Ill.App.3d 1015, 1020, 339 N.E.2d 529 (1975).

In *Kubiniski*, the court stated that in order for there to be a waiver of the provisions of a contract the facts and circumstances must show an intentional relinquishment of a known right, and the acts relied on must be inconsistent with an intention to insist on the rights of the party under the contract. *Id.* at 1020 [339 N.E.2d 529]. McCann's actions indicate no intentional relinquishment of any contractual rights. The day after his firing, the locks on his office had already been changed preventing him from performing his obligations under the agreement. Thereafter, his only statements to Hall employees were that he had been fired. Understanding that he had been fired and intentionally relinquishing his right to written notice are two vastly different things. Indeed, Hall's own actions indicate it recognized the importance of written notice by its sending written notice in April of 1983.

In summary, Hall did not give effective notice of termination until April 29, 1983. There was no waiver of the right to written

**2.** McCann's interpretation of the length of the extension is erroneous. He contends that any notice given in 1983 is not effective until December 31, 1983 and then the two-year extension begins. In other words, McCann contends his contract extended until December 31, 1985. However, the contract specifically states,

"Unless you or the Company given written notice of termination, this agreement will be automatically extended on December 31 of each year to the December 31 two years from the date of the extension. *For example, if no notice of termination is given in 1980, the*

*agreement will be automatically extended on December 31, 1980 to a term to end December 31, 1982.* A written notice of termination shall be effective on the date to which the agreement had last been extended. For example, a notice of termination delivered in 1981 shall be effective on December 31, 1982." [Emphasis added].

No written notice was given by December 31, 1982. Thus, the agreement automatically extended to December 31, 1984. Written notice was given in 1983, thereby making it effective as of December 31, 1984.

notice by McCann. Therefore, the agreement extended from December 31, 1982 to December 31, 1984.[3]

## II. RESTRICTIVE COVENANT.

McCann seeks a judicial determination that the restrictive covenant in his employment agreement is void as against public policy. The restrictive covenant in McCann's contract states:

> "Except with the written consent of the Company, you agree that while this agreement is in force and for two years after the agreement terminates, you will not compete directly or indirectly with the Company or any of its subsidiaries by soliciting or receiving income in any form for providing insurance services to any person or entity which was a client of the Company or any of its subsidiaries at any time during the six months prior to the end of the term of this agreement."

Since we have found that McCann's contract terminated December 31, 1984, this restrictive covenant would be in effect until December 31, 1986. Restrict covenants are not *per se* void in Illinois. Illinois has long recognized the right of an employer to protect "legitimate business interests" by the use of restrictive covenants. *See, e.g., Hursen v. Gavin,* 162 Ill. 380, 44 N.E.2d 735 (1896); *House of Vision v. Hiyane,* 37 Ill.2d 352, 255 [225] N.E.2d 21 (1967). However, Illinois takes a case by case approach to determine the reasonableness of restrictive covenants. The court stated in *MBL (USA) Corp. v. Diekman,* 112 Ill. App.3d 229, [67 Ill.Dec. 938] 237–8, 444 [445] N.E.2d 418 (1983), that "the question of enforceability [of a restrictive covenant] is a matter of law to be decided on the particular facts of each case." Illinois uses what has been called the "blue pencil rule" to rewrite the covenant with reasonable restrictions. *House of Vision, supra.*

As a general rule, it can be said that the more limited the covenant is in geographic scope and length of time, the more likely it will be upheld. *See, e.g., Wessel Co. v. Busa,* 28 Ill.App.3d 686, 328 [329] N.E.2d 52 [414] (1975). However, where the employer has trade secrets of confidential customer lists which he may legitimately protect, a court will uphold greater restrictions. *See Vander Weif v. Zunica Reality Co.,* 59 Ill.App.2d 173, 208 N.E.2d 74 (1965).

In the case at bar, the covenant appears to be unreasonable on its face since it contains no geographic limitations and a lengthy time restriction. But there are too many genuine issues of material fact for this Court to grant summary judgment. In a motion for summary judgment, the allegations made by the non-moving party are regarded as true. *See, e.g., Askew v. Bloemaker,* 548 F.2d 673, 680 (7th Cir.1976). Hall has alleged that it has trade secrets and confidential customer lists. (Defendant's Memorandum in Opposition to Partial Summary Judgment, Ex. B). Although it is doubtful that these allegations are true, *see American Hardware Mut. Ins. Co. v. Moran,* 705 F.2d 219, 222–23 (7th Cir.1983), they must be accepted as true in the present motion. Since these factors change what may be reasonable in a restrictive covenant, the Plaintiff's motion to declare the restrictive covenant void should be denied.

## III. RENT AND OTHER BENEFITS.

Since McCann's contract has been construed as extending to December 31, 1984, Hall will be liable for an additional years' rental payment for one-half the amount for McCann's Chicago apartment. This amount equals $27,000.00 dollars.

McCann also seeks 2,000 shares of Hall stock or its cash equivalent; and $30,000.00 in insurance benefits. These requests cannot be considered in his motion since he has submitted insufficient proof as to his right to these benefits, nor were they a part of his employment agreement.

McCann's request for an award because of his mental anguish and for attorneys'

---

**3.** Hall also submits a Telex announcement from November 10, 1983, announcing McCann's "resignation" from Hall. This Telex certainly does not constitute written notice of termination, nor has Hall shown that McCann ever received or knew of the contents of the Telex.

**634**

fees are also improper considerations in the motion for partial summary judgment.

For the reasons stated herein, IT IS RECOMMENDED that the court order Hall to pay an additional $150,000.00 dollars to McCann for salary from December 31, 1983 to December 31, 1984, and to pay an additional $27,000.00 for rental of McCann's Chicago apartment through 1984.

Respectfully submitted,
/s/ James T. Balog
JAMES T. BALOG
United States Magistrate